[No. 45371-8-I.   Division One.   July 30, 2001.]

THE STATE OF WASHINGTON, *Respondent*, v. MATTHEW GARRETT SILVA, *Appellant*.

606

608

*Sabrina K. Housand*; and *Eric Broman* (of *Nielsen, Broman & Associates, P.L.L.C.*), for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Andrea R. Vitalich, Deputy*, for respondent.

BAKER, J. — In this case, we are asked to decide whether article I, section 22 of the Washington State Constitution affords a pro se pretrial detainee a greater right of access to the courts than the federal constitution provides. We hold that it does, but that Silva was provided that access. We also clarify the role standby counsel plays in assisting a pro se defendant.

## I

Matthew Silva was charged with taking a car without permission and attempting to elude the police. He was held on $10,000 bond and remained in prison during the pendency of his trial. Under CrR 3.3, he was entitled to a trial within 60 days.

Early in the pretrial proceedings, Silva moved to proceed pro se, which the trial court, after considerable admonishment, granted. Over Silva's objection, the court nevertheless appointed standby counsel. After that ruling, pretrial proceedings became quite confused. In numerous pretrial motions, Silva insisted that he enjoyed a constitutional right of physical access to a law library or a person trained in the law to perform research services for him. He also argued that he should have an investigator/runner ap-

pointed for him to interview witnesses and serve subpoenas. It appears that the trial court expected that the public defender would provide these services for Silva.

But the public defender originally appointed as standby counsel steadfastly maintained that his role was only to offer technical assistance during court proceedings and to step in as counsel should Silva change his mind and request representation. Counsel refused to provide investigative, research, or runner services for Silva, arguing that such a responsibility could expose the public defender's office to unfounded research requests and other unreasonable demands. Standby counsel noted that not every defendant with appointed counsel is provided with the services of an investigator, let alone those who have declined the assistance of counsel. Both the defender's office and the prosecutor did, however, offer to arrange witness interviews and counsel provided blank subpoena forms to Silva.

During the arguments on these pretrial motions, the trial court expressed considerable uncertainty concerning the proper procedures for pro se defendants. It granted Silva's motions regarding access to some legal materials, but did not order standby counsel to provide investigative and legal research services. It also denied Silva's motion for access to a direct dial telephone and physical access to the law library. The State produced to Silva its discovery, including the names of witnesses, albeit without addresses or telephone numbers.

On notification that Silva wanted to interview all 14 of the State's potential witnesses, the State arranged for Silva to interview the first 3. It did not provide advance notice of the interview date to Silva, and so when Silva was brought to the prosecutor's office and told that three witnesses were waiting for him, he objected, stating that he was unprepared and would not proceed without an advocate present. Although the prosecutor offered Silva time to prepare before interviewing the witnesses, Silva would not proceed and he was escorted back to the jail. The State refused to arrange any more witness interviews.

Shortly before the scheduled trial date, the court allowed the appointed standby counsel to withdraw and appointed new standby counsel from a different public defender agency. On the trial date, which was also the expiration of the 60-day speedy trial period, new standby counsel agreed to allow Silva access to his in-house investigator. However, counsel stated for the record that he was not obligated to provide this service and further, that he would not perform research services because his role was to serve as standby counsel only. Silva requested a continuance to give the investigator time to prepare, expressly waiving his right to a speedy trial. The court granted his motion. Silva later requested another continuance for the same reason and again expressly waived his right to a speedy trial. Again, the court granted his request. In total Silva's trial was delayed 31 days.

On the day of trial, Silva moved to dismiss on speedy trial grounds. The court commented that it found the first standby counsel's refusal to provide research and investigative services on behalf of Silva "stunning." Nevertheless, the court declined to dismiss the case. Upon conclusion of a stipulated trial, Silva was found guilty of attempting to elude. He appeals.

## II

■ Silva first argues that the trial court should have dismissed his case because he was denied his statutory right to a speedy trial. We review a trial court's decision to grant a continuance for abuse of discretion.[1] CrR 3.3(c)(1) provides that a defendant who is incarcerated prior to trial must be brought to trial within 60 days after the date of arraignment. A court may, however, continue a criminal case in the administration of justice if the defendant will not be substantially prejudiced in the presentation of his

---

[1] *State v. Terrovona*, 105 Wn.2d 632, 651, 716 P.2d 295 (1986).

defense.[2] Violation of this rule requires that the criminal charge be dismissed with prejudice.[3] Silva claims that because he did not receive the resources he needed to prepare a meaningful pro se defense until the expiration of his 60-day speedy trial period, the State deprived him of his state and federal constitutional right of access to the courts, thus compelling dismissal.

The State responds that Silva waived his right to a speedy trial by requesting the very continuances of which he now complains. A defendant may waive his right to a speedy trial by requesting a continuance.[4] In *State v. Thomas*, we held that the defendant had waived his right to a speedy trial although the reason for the continuance, defense counsel's belated conflict of interest disclosure, was beyond defendant's control.[5] We reasoned that the delay was in no way attributable to the State, and moreover, Thomas had failed to show that he was substantially prejudiced in the presentation of his defense.[6] In fact, had the trial court denied Thomas' motion for a continuance, it would have forced him to proceed pro se or with inadequate counsel, which may well have been a violation of his right to effective assistance of counsel.[7]

In this case, Silva twice requested that his trial be continued: first, so that his newly available investigator could have adequate time to prepare; and second, because the investigator had not yet completed the work. Each time, Silva stated an express waiver on the record. Nevertheless, we agree with Silva that if the State deprived him of his constitutional right of access to the courts, his waivers were

---

[2] CrR 3.3(h)(2); *State v. Thomas*, 95 Wn. App. 730, 737-38, 976 P.2d 1264 (1999), *review denied*, 139 Wn.2d 1017 (2000).

[3] CrR 3.3(i); *Thomas*, 95 Wn. App. at 735.

[4] *State v. Valdobinos*, 122 Wn.2d 270, 274, 858 P.2d 199 (1993); *Thomas*, 95 Wn. App. at 738.

[5] 95 Wn. App. 730, 738-39, 976 P.2d 1264 (1999), *review denied*, 139 Wn.2d 1017 (2000).

[6] *Thomas*, 95 Wn. App. at 738-39.

[7] *Thomas*, 95 Wn. App. at 738.

coerced and therefore invalid. We therefore proceed to address Silva's constitutional claims.

■ Silva contends that both the federal constitution and article I, section 22 of the Washington State Constitution guarantee him a right of access to the tools necessary to prepare a meaningful pro se defense. Specifically, he argues that the State impermissibly failed to provide him an investigator, physical access to a law library or a person trained in the law to assist with research, and access to a direct dial telephone. When a party properly alleges violations of both the federal and Washington constitutions, we first examine the state constitutional claim.[8] Washington courts have not yet interpreted article I, section 22 relating to an accused's right of access to the courts. Because Silva supports his state constitutional claim with a thorough briefing of the factors listed in *State v. Gunwall*,[9] we proceed to a state constitutional analysis.

■ When a section of our state constitution has a parallel provision under the federal constitution,[10] we consider the following nonexclusive list of factors to determine whether our constitution extends broader rights to our citizens than the United States Constitution:

(1) The textual language of the state constitution;

(2) Significant differences in the texts of parallel provisions of the federal and state constitutions;

(3) State constitutional and common law history;

(4) Preexisting state law;

(5) Differences in structure between the federal and state constitutions; and

---

[8] Hugh D. Spitzer, *Which Constitution? Eleven Years of* Gunwall *in Washington State*, 21 Seattle U. L. Rev. 1187, 1203 (1998) (citing *State v. Hendrickson*, 129 Wn.2d 61, 69, 917 P.2d 563 (1996) (Talmadge, J.); *State v. Johnson*, 128 Wn.2d 431, 457, 909 P.2d 293 (1996) (Smith, J.); *State v. Young*, 123 Wn.2d 173, 178, 867 P.2d 593 (1994) (Johnson, J.); *O'Day v. King County*, 109 Wn.2d 796, 801-02, 749 P.2d 142 (1988) (Utter, J.); *State v. Stroud*, 106 Wn.2d 144, 154, 720 P.2d 436 (1986) (Durham, J., concurring)).

[9] 106 Wn.2d 54, 720 P.2d 808 (1986).

[10] Spitzer, *supra*, at 1207-08.

(6) Matters of particular state interest or local concern.[11]

The purpose of these factors is not to presumptively adhere to federal constitutional analysis.[12] Although we give significant weight to federal decisions when interpreting analogous state provisions, they serve as guides only and are not binding precedent.[13] Rather, the analysis provides a full understanding of the relevant language, history, and policy of the State Declaration of Rights.[14] From that informed perspective, we may then achieve a balanced and complete development of the issue and avoid baseless, result-oriented jurisprudence.[15]

Before commencing the *Gunwall* analysis, however, we first review the right of access to the courts under federal law. We do this because we must first understand the breadth of that right before we can determine whether our state constitution affords greater protection to an accused than does the federal constitution.[16] In federal jurisprudence, the principle of a prisoner's constitutional right of access to the courts has its roots in a line of United States Supreme Court cases, which held that states could not thwart prisoners' postconviction attempts to raise federal constitutional claims in court.[17] For example, in *Ex Parte Hull*,[18] the Court held that state prison officials could not screen inmate federal habeas corpus petitions, allowing

---

[11] *Gunwall*, 106 Wn.2d at 58.

[12] Spitzer, *supra*, at 1203.

[13] Spitzer, *supra*, at 1203 (citing *State v. Fortune*, 128 Wn.2d 464, 474-75, 909 P.2d 930 (1996); *Rozner v. City of Bellevue*, 116 Wn.2d 342, 351, 804 P.2d 24 (1991)).

[14] Spitzer, *supra*, at 1204.

[15] Spitzer, *supra*, at 1205 (citing *State v. Clark*, 124 Wn.2d 90, 95 n.2, 875 P.2d 613 (1994); *O'Day*, 109 Wn.2d at 801-02).

[16] *State v. Foster*, 135 Wn.2d 441, 455, 957 P.2d 712 (1998).

[17] 3 WAYNE R. LaFAVE ET AL., CRIMINAL PROCEDURE, *Indigent's Right to Counsel* § 11.2(f), at 525 (2d ed. 1999).

[18] 312 U.S. 546, 61 S. Ct. 640, 85 L. Ed. 1034 (1941).

only those "properly drawn" petitions to proceed.[19] Likewise, in *Johnson v. Avery*,[20] the Court struck down a prison's prohibition against inmates assisting other inmates with the preparation of legal documents.[21]

In *Bounds v. Smith*, the Court went further and held that a prisoner's postconviction right to meaningful access to the courts requires that states provide "adequate law libraries or adequate assistance from persons trained in the law."[22] It reasoned:

> [I]n this case, we are concerned in large part with original actions seeking new trials, release from confinement, or vindication of fundamental civil rights. Rather than presenting claims that have been passed on by two courts [where assistance of counsel was provided], they frequently raise heretofore unlitigated issues. . . . The need for new legal research or advice to make a meaningful initial presentation to a trial court in such a case is [great].[23]

The Court in *Bounds* did not address the constitutional underpinnings of its ruling, although it has later been described as either a due process right or an equal protection right.[24] Moreover, the Court has not since clarified the issue as it relates to pretrial detainees' right of access. But a majority of the federal circuits have held that once a pretrial detainee rejects assistance of counsel, he does not have the same right of access to the courts that is available

---

[19] 3 LaFave et al., *supra*, at 525.

[20] 393 U.S. 483, 89 S. Ct. 747, 21 L. Ed. 2d 718 (1969).

[21] 3 LaFave et al., *supra*, at 525. *See also Bounds v. Smith*, 430 U.S. 817, 824-25, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977) (states must provide without cost to prisoners pen and paper to draft legal documents, notaries, postage, and trial transcripts. States must also pay lawyers to represent indigent defendants at trial) (citing *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963)). Limited by *Lewis v. Casey*, 518 U.S. 343, 350-51, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996) in which the Court held that *Bounds* does not create a freestanding right to law library or legal assistance, so inmate, to prove constitutional deprivation, must show actual injury.

[22] 430 U.S. 817, 828, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977).

[23] *Bounds*, 430 U.S. at 827-28 (citations omitted).

[24] 3 LaFave et al., *supra*, at 527.

to the postconviction prisoner under *Bounds*.[25] The Ninth Circuit, while agreeing with the majority on this basis, has nevertheless held that a pretrial detainee who has exercised his Sixth Amendment right of self-representation retains a right of access to the courts in order to effectuate his self-representation.

In *Milton v. Morris*,[26] a pretrial detainee represented himself, but was prohibited by jail officials from any contact outside the jail, and the law books provided to him were outdated.[27] The Ninth Circuit relied on the Sixth Amendment right of self-representation established in *Faretta v. California*[28] in holding that Milton was entitled to reasonable access to legal materials.[29] The court stated:

> In summary, a defendant in jail is constitutionally entitled to conduct his own defense. If he elects to do so by rejecting the services of an attorney to *conduct* his defense, he cannot be confined to his jail simply to look at the four walls and appear on the day of trial to defend himself. He must be afforded

---

[25] *See United States v. Chatman*, 584 F.2d 1358 (4th Cir. 1978) (*Bounds* does not apply to pretrial detainees and state satisfies its obligation to defendant under the Sixth Amendment when offering absolute right to appointed counsel. Defendant's choice not to accept counsel's representation does not vest in him constitutional right to dictate an alternate form of assistance.); *United States v. Taylor*, 183 F.3d 1199, 1205 (10th Cir.) (prisoner who voluntarily, knowingly and intelligently waives his right to counsel in a criminal proceeding is not entitled to access to a law library or other legal materials (citing *Degrate v. Godwin*, 84 F.3d 768, 769 (5th Cir. 1996)), *cert. denied*, 528 U.S. 904 (1999); *United States v. Smith*, 907 F.2d 42 (6th Cir. 1990); *United States ex rel. George v. Lane*, 718 F.2d 226 (7th Cir. 1983); *Kelsey v. Minnesota*, 622 F.2d 956 (8th Cir. 1980); *United States v. Wilson*, 690 F.2d 1267 (9th Cir. 1982) (*Bounds* right of access satisfied when state offered appointed counsel at its expense. Defendant could not insist on avenue of his own choosing). *But see Lyons v. Powell*, 838 F.2d 28 (1st Cir. 1988) (pretrial detainee not deprived of *Bounds* right of access because he had access to the prison library).

[26] 767 F.2d 1443 (9th Cir. 1985).

[27] 767 F.2d at 1444.

[28] 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975) (corollary to a defendant's right to assistance of counsel under the Sixth and Fourteenth Amendments is a defendant's absolute right to reject that assistance and to represent himself).

[29] *Milton*, 767 F.2d at 1446.

reasonable access . . . [the lack of which would] render *Faretta* meaningless to a confined defendant.[30]

The Ninth Circuit reaffirmed its position in *Taylor v. List*,[31] in which a prisoner filed a 42 U.S.C. § 1983 action alleging that the state had (1) denied him personal access to prison law clerks and use of law books; (2) interfered with access to witnesses; and (3) intimidated and coerced a witness from giving expert testimony on Taylor's behalf at his criminal trial.[32] The court reversed summary judgment as to two defendants, reasoning that a pretrial detainee "may not meaningfully exercise [a Sixth Amendment] right to represent himself without access to law books, witnesses, or other tools to prepare a defense."[33] The court concluded that there was an issue of material fact as to whether the defendants had interfered with plaintiff's right.[34] We note that despite the Ninth Circuit's firm position on the issue, other circuits have not adopted similar holdings. Because the status and basis of federal law on the issue is unsettled, we begin our *Gunwall* analysis by considering whether the Washington Constitution provides such a right and if so, the extent of that right.

1-2. Text and differences between the texts. Article I, section 22 of the Washington Constitution's Declaration of Rights is entitled "Rights of the Accused" and provides in relevant part, "In criminal prosecutions the accused shall have the right to appear and defend in person, or by counsel . . . ." This right has been interpreted by our courts as the right of an accused to be present at trial.[35] But the phrase has also been interpreted as unequivocally guaran-

---

[30] *Milton*, 767 F.2d at 1448; *See also* Josephine R. Potuto, *The Right of Prisoner Access: Does* Bounds *have Bounds?*, 53 IND. L. J. 207, 227-33 (1977-78).

[31] 880 F.2d 1040 (9th Cir. 1989).

[32] 880 F.2d at 1042-43. *See also United States v. Robinson*, 913 F.2d 712 (9th Cir. 1990) (pretrial detainee not deprived of right of access by being required to choose between appointed counsel and one box of legal materials).

[33] *Taylor*, 880 F.2d at 1047.

[34] *Taylor*, 880 F.2d at 1042.

[35] *See State v. Finch*, 137 Wn.2d 792, 975 P.2d 967, *cert. denied*, 528 U.S. 922 (1999).

teeing an accused the constitutional right to represent himself.[36]

In contrast, the Sixth Amendment of the federal constitution states simply:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . and to have the Assistance of Counsel for his defence.

The Sixth Amendment does not explicitly grant an accused the right to conduct his own defense. Rather, the right was implied by the Supreme Court in *Faretta v. California* when it reasoned that:

> The Sixth Amendment . . . grants to the accused personally the right to make his defense [because] [i]t is the accused, not counsel, who must be "informed of the nature and cause of the accusation," who must be "confronted with the witnesses against him," and who must be accorded "compulsory process for obtaining witnesses in his favor."[37]

Because an implied right is a matter of interpretation, it is not immune from further interpretation and modification. Indeed, the Supreme Court has engaged in considerable reinterpretation of the rights of those accused of crimes since *Faretta*.[38] By contrast, the right of self-representation under the Washington Constitution is clear and explicit. We

---

[36] *State v. Kolocotronis*, 73 Wn.2d 92, 97, 436 P.2d 774 (1968); *State v. Barker*, 75 Wn. App. 236, 238, 881 P.2d 1051 (1994); *State v. Breedlove*, 79 Wn. App. 101, 105-06, 900 P.2d 586 (1995). New York has interpreted its similar constitutional provision in like manner. *See People v. Gordon*, 179 Misc. 2d 940, 942-43, 688 N.Y.S.2d 380, 382-83 (1999) (Article I, section 6 of the New York Constitution, which provides that "In any trial in any court whatever the party accused shall be allowed to appear and defend in person and with counsel," affords a plaintiff an explicit right of self-representation).

[37] *Faretta*, 422 U.S. at 819.

[38] Robert F. Utter, *State Constitutional Law, the United States Supreme Court, and Democratic Accountability: Is There a Crocodile in the Bathtub?*, 64 WASH. L. REV. 19, 29 (1989); Spitzer, *supra*, at 1190. *See generally* Robert N. Clinton, *The Right to Present a Defense: An Emergent Constitutional Guarantee in Criminal Trials*, 9 IND. L. REV. 713 (1976) (discussing implied right to present defense in Fifth and Sixth Amendments). This article was written during a time of expansive interpretation of federal constitutional rights in contrast to the later federal circuit decisions discussed herein, which hold that no federal constitutional right exists for pro se defendants to have access to tools necessary to prepare a defense.

conclude that the differences in the text of the constitutional provisions have great significance in determining what is required to effectuate those rights.

■ 3. State constitutional and common law history. Scant accessible history exists regarding the intentions of the framers of the Washington Constitution. Still, at the time Washington adopted its constitution, the federal Bill of Rights had already been established and Washington did not adopt its language.[39] Rather, the framers copied much of the Washington Constitution's Declaration of Rights from the constitutions of older states.[40] As former Washington Supreme Court Justice Robert Utter stated, it would defy logic to assume that "a declaration of rights copied from such a state constitution at a time when the federal Bill of Rights did not apply to the states, was meant to be interpreted with reference to federal courts' interpretations of the federal Constitution."[41] The decision to use other states' constitutional language also indicates that the framers did not consider the language of the United States Constitution to adequately state the extent of the rights meant to be protected by the Washington Constitution.

Although our review of state constitutional history consists largely of well supported inferences, our state common law history provides more particularized guidance. Without squarely addressing the issue, Washington courts have stated in passing that a pro se pretrial detainee does have a continued right of access to the courts after declining the assistance of counsel. In *State v. Bebb*,[42] the appellant argued that the trial court's ruling that no privilege existed between his standby counsel and him, as a pro se defendant, denied him access to the courts because he allegedly

---

[39] Robert F. Utter, *Freedom and Diversity in a Federal System: Perspectives on State Constitutions and the Washington Declaration of Rights*, 7 U. PUGET SOUND L. REV. 491, 496-97 (1984).

[40] Utter, *supra*, at 496-97. *See also* FLA. CONST. art. I, § 8; IND. CONST. art. I, § 13; MO. CONST. art. I, § 18(a); CONN. CONST. art. I, § 8; N.Y. CONST. art. I, § 6.

[41] Utter, *supra*, at 497.

[42] 108 Wn.2d 515, 740 P.2d 829 (1987).

could not trust his standby counsel.[43] In the course of rejecting Bebb's argument, the court stated:

> In order to ensure a meaningful pro se defense, the State must allow the defendant reasonable access to legal materials, paper, writing materials, and the like.[44]

The court then concluded that because the trial court's ruling did not interfere with standby counsel's function, Bebb had not been denied access to the court.[45]

In *State v. Nicholas*,[46] we relied on *Bebb* in rejecting a pretrial detainee's argument that he was denied access to the courts. We held that although Nicholas was denied physical access to the law library, his claims were nevertheless meritless because standby counsel was available to him to provide him with any legal materials he needed and the court had also provided funds to hire a "runner" to do legwork.[47] In addition, our courts have held that the right to counsel is violated if counsel's representation is not meaningful.[48] This rationale applies with equal force to the issue of pro se access to the courts. The right of self-representation guaranteed in our state constitution is a substantive right, not a mere formality. Just as the right to appointed counsel is not satisfied unless the representation

---

[43] 108 Wn.2d at 524, 526.

[44] *Bebb*, 108 Wn.2d at 524 (citing generally *Bounds v. Smith*, 430 U.S. at 828).

[45] *Bebb*, 108 Wn.2d at 526. *See also State v. Dougherty*, 33 Wn. App. 466, 471, 655 P.2d 1187 (1982) (if a defendant has "knowingly and intelligently exercised his right of self-representation, the appointment of standby counsel meets the meaningful access requirement of *Bounds*").

[46] 55 Wn. App. 261, 776 P.2d 1385 (1989).

[47] *Nicholas*, 55 Wn. App. at 268.

[48] *See In re Quesnell*, 83 Wn.2d 224, 233-34, 517 P.2d 568 (1973) (subject of a mental commitment proceeding was denied her constitutional right to assistance of counsel because guardian ad litem appointed for her provided no meaningful representation); *State v. Elmore*, 139 Wn.2d 250, 312, 985 P.2d 289 (1999) (Sanders, J., dissenting) ("A criminal defendant's right to counsel guaranteed by the federal and state constitutions is not merely a simple right to have counsel appointed but is a substantive right to meaningful representation.") (citing *Evitts v. Lucey*, 469 U.S. 387, 395, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985), *cert. denied*, 531 U.S. 837 (2000); *Strickland v. Washington*, 466 U.S. 668, 685, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

is meaningful, the right to represent oneself cannot be satisfied unless it is made meaningful by providing the accused the resources necessary to prepare an adequate pro se defense.

4. Preexisting state law. Our review of preexisting state law is not helpful. Chapter 289-22 WAC, promulgated under the City and County Jails Act, chapter 70.48 RCW, merely codifies the federal constitutional requirements of *Bounds*.[49] To rely on it for guidance would be an exercise in circular reasoning.

5. It is well established that the differences in structure between the federal and state constitutions inherently support independent review of our state constitution.[50]

6. Matters of particular state interest or local concern. Finally, the manner in which an accused's state constitutional right of self-representation is effectively exercised is plainly of state interest and local concern. This conclusion is consistent with other Washington cases holding that protection of Washington citizens from double jeopardy,[51] the State's interest in law enforcement,[52] and Washington citizens' privacy interests,[53] are all matters of state interest or local concern.

One additional factor we consider is the tension between a defendant's right to represent himself and his constitutional right to a fair trial. In exercising the right to proceed pro se, a defendant necessarily waives the cherished right to be represented by counsel, a choice that affects his right to a fair trial because it " 'will almost surely result in detriment to both the defendant and the administration of

---

[49] "(a) When adequate professional legal assistance is not available to prisoners for purposes of preparing and filing legal papers, a jail shall provide access to necessary law books and reference materials. (b) Facility rules shall not prohibit one prisoner from assisting another in the preparation of legal papers." WAC 289-22-200(4).

[50] *Richmond v. Thompson*, 130 Wn.2d 368, 382, 922 P.2d 1343 (1996).

[51] *State v. Gocken*, 127 Wn.2d 95, 105, 896 P.2d 1267 (1995).

[52] *Richmond*, 130 Wn.2d at 382-83.

[53] *State v. Johnson*, 128 Wn.2d 431, 446, 909 P.2d 293 (1996).

justice.' "[54] Moreover, the pro se defendant must bear the consequences of his own representation because he cannot complain on appeal of the quality of his defense.[55]

In *State v. Fritz*, we acknowledged the tension between the right of self representation and the right to a fair trial in the context of whether a trial court has the affirmative obligation to inform a defendant of his right to proceed pro se. We noted that it did not because, "bluntly put":

> "Unlike the right to assistance of counsel, the right to dispense with such assistance and to represent oneself is guaranteed not because it is essential to a fair trial but because the defendant has a personal right to be a fool."[56]

Although the language in *Fritz* is harsh, an accused may decide that his opportunity to devote full time to his own defense, in contrast to the often limited time available from appointed counsel, may outweigh the dangers of ignorance of the law and criminal and evidence rules, as well as limited access to resources otherwise available to counsel. We agree with the Ninth Circuit Court of Appeals that a defendant, presumed to be innocent, cannot be confined to the four walls of his prison cell until trial and then be expected to appear on the day of trial, ready to represent himself. Without some means by which to defend against the charges against him, an accused's right to represent himself would be meaningless.

After full consideration of the factors outlined above, we conclude that article I, section 22 affords a pretrial detainee who has exercised his constitutional right to represent himself a right of reasonable access to state-provided resources that will enable him to prepare a meaningful pro se defense. What measures are necessary or appropriate to constitute reasonable access lie within the sound discretion

---

[54] *State v. Fritz*, 21 Wn. App. 354, 359, 585 P.2d 173 (1978) (quoting *People v. Salazar*, 74 Cal. App. 3d 875, 141 Cal. Rptr. 753, 761 (1977)).

[55] *Fritz*, 21 Wn. App. at 360 (citing *Faretta*, 422 U.S. at 834 n.46).

[56] *Fritz*, 21 Wn. App. at 359 (defendant does not have unqualified right of self-representation) (quoting *Salazar*, 141 Cal. Rptr. at 761).

of the trial court after consideration of all the circumstances, including, but not limited to, the nature of the charge, the complexity of the issues involved, the need for investigative services, the orderly administration of justice,[57] the fair allocation of judicial resources (i.e., an accused is not entitled to greater resources than he would otherwise receive if he were represented by appointed counsel), legitimate safety and security concerns,[58] and the conduct of the accused.[59]

In this case, Silva did not have the physical access to the law library he requested, nor did he have research services from standby counsel. He was also not provided a list of research materials available from the law library. However, the library services provided by the jail allowed Silva to ask general legal questions of a law librarian or request materials on general legal topics and issues. He was given relevant materials that enabled him to browse the law germane to his case and to identify additional legal issues, from which he could then request additional legal materials. Moreover, Silva was provided a copy of every case and legal publication he requested by citation. Thus, well before the expiration of his speedy trial period, Silva was provided the following legal materials:

(1) Washington Court Rules;

(2) Title 9, RCWA;

(3) *Washington Practice*, Vol. 12;

(4) Title 9A, RCWA;

(5) Title 10, RCWA;

(6) *Washington Practice*, Vol. 13;

(7) Copies of all cases he requested.

---

[57] *Fritz*, 21 Wn. App. at 361 (pro se cannot use right of self-representation to unjustifiably delay scheduled trial or obstruct orderly administration of justice).

[58] *See Taylor*, 880 F.2d at 1047.

[59] *Fritz*, 21 Wn. App. at 363. *See, e.g., In re Whitaker*, 513 U.S. 1, 115 S. Ct. 2, 130 L. Ed. 2d 1 (1994) (petitioner not entitled to proceed in forma pauperis in frivolous petition for damages of two dollars in allegedly illegal taxes as unfair burden in allocation of judicial resources).

Silva was not deprived of appropriate legal materials.

■ Silva next claims that he had a right to the appointment of an investigator. There is no authority holding that the right of self-representation embodies a right to have an investigator assigned to the defendant. This is not to say that the services of an investigator may never be constitutionally required. Whether an investigator must be appointed to ensure adequate preparation of a meaningful pro se defense must be determined by the trial court after considering the needs of the case. The record in this case does not establish that Silva needed an investigator to prepare his defense, nor has Silva demonstrated that he was prejudiced by the lack of one. We therefore decline to hold that Silva was deprived of adequate resources on this basis.

■ We likewise are not persuaded that Silva's lack of a direct dial telephone prevented him from preparing a meaningful defense. He had access to the inmates' telephone, which makes collect calls only, as well as access through his standby counsel. His claims that he needed the telephone to contact witnesses and standby counsel, and to confirm pretrial motions fail because (1) he was not allowed direct contact with witnesses for security reasons; (2) his access to his standby counsel would have been no greater with a direct dial telephone than with the inmates' telephone; and (3) the record reflects that he was fully capable of filing and confirming motions without direct telephone access.

■ We also conclude that Silva's access to witnesses, although awkward, was constitutionally sufficient. Meaningful access to witnesses requires at a minimum that the defendant be afforded the opportunity to prepare for witness interviews, preferably by advance notice of both the meeting date and the names of the persons to be interviewed. In addition, a defendant must also have some means by which to impeach the witness at trial should the need arise. In Silva's case, the State engaged in a labor-intensive effort to provide Silva access to 3 of the 14

witnesses Silva desired to interview. But it provided Silva neither advance notice of the meeting nor the names of the witnesses present to be interviewed. Consequently, when Silva arrived at the prosecutor's office, he had no knowledge of why he was there and, upon discovering the reason, was understandably not prepared.

The prosecutor did, however, offer Silva time to prepare before conducting the interviews. In light of the nature of the charges in this case, attempting to elude and taking a vehicle without permission, we hold that this offer satisfied Silva's need for meaningful preparation time. Moreover, the prosecutor also offered to tape-record the interviews, which would have allowed Silva the opportunity to impeach the witnesses at trial if the need arose. Silva is not constitutionally entitled to standby counsel, so his refusal to proceed with the interviews in the absence of counsel was not justified. Because Silva refused to proceed with the first witness interviews, and because he had the opportunity to interview the witnesses again during trial but before their testimony, it was not constitutionally offensive for the prosecutor to refuse to schedule any more pretrial witness interviews.

In total, the court provided to Silva before the expiration of the speedy trial time, the following resources to prepare his defense:

(1) Access to legal materials;

(2) Pencil and paper;

(3) Copying services;

(4) Inmates' telephone;

(5) Sheriff's office to serve subpoenas;

(6) Coordination services through standby counsel (arranging interviews, confirming motions);

(7) Blank subpoena forms from standby counsel;

(8) Postage;

(9) Access to a notary; and

(10) Witness interviews.

We hold that these state-provided resources constituted the reasonable tools necessary for Silva to prepare a meaningful pro se defense under article I, section 22 of the Washington Constitution. Consequently, Silva's speedy trial waivers were valid and the trial court properly refused to dismiss the case.

▮▮ Silva next argues that justice required the trial court to dismiss his case under CrR 8.3(b). Under this rule, a trial court, after notice and hearing, may dismiss any criminal prosecution in the furtherance of justice. To justify dismissal, a defendant must show that he was prejudiced in his ability to receive a fair trial by arbitrary action or misconduct on the part of the government.[60] We review a denial of a motion to dismiss for manifest abuse of discretion.[61] Silva argues that his awkward access to witnesses and limited resources to prepare a defense constitute state misconduct or arbitrary action. But because we hold that Silva suffered no constitutional violation, the trial court properly denied his motion to dismiss.

▮ Finally, we take this opportunity to clarify the role of standby counsel, which has not been clearly delineated in Washington case law and was a troublesome issue in this case. At the outset, we note that the issue of standby counsel's role arises in two contexts: first, where standby counsel has been appointed by the trial court over the objection of the accused, as happened in this case, and second, where, also in this case, the defendant seeks the services of standby counsel to aid in his pro se defense. We also note that there is no federal constitutional right to standby counsel[62] and no Sixth Amendment right to hybrid representation wherein a defendant serves as cocounsel with his attorney.[63] Moreover, once a defendant has validly waived his right to counsel, he may not later demand the

[60] *State v. Michielli*, 132 Wn.2d 229, 239-40, 937 P.2d 587 (1997).

[61] *Michielli*, 132 Wn.2d at 240.

[62] *State v. DeWeese*, 117 Wn.2d 369, 379, 816 P.2d 1 (1991).

[63] *DeWeese*, 117 Wn.2d at 379.

assistance of counsel as a matter of right.[64]

Traditionally, the role of standby counsel has been discussed in the context of appointment over the objection of the accused. The discussion has focused on the extent to which standby counsel may act without impermissibly infringing on an accused's constitutional right of self-representation.[65] In this situation, a court may appoint standby counsel over the objection of the accused "to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary."[66] In *McKaskle v. Wiggins*,[67] the Court held that standby counsel may engage in unsolicited participation in the defense, so long as counsel does not interfere with significant tactical decisions, control the questioning of witnesses, speak instead of the defendant on material matters, or give the impression to the jury that the defendant is not representing himself.[68]

The American Bar Association has defined the role of standby counsel as follows:

(a) Defense counsel whose duty is to actively assist a pro se accused should permit the accused to make the final decisions on all matters, including strategic and tactical matters relating to the conduct of the case.

(b) Defense counsel whose duty is to assist a pro se accused only when the accused requests assistance may bring to the attention of the accused matters beneficial to him or her, but should not actively participate in the conduct of the defense unless requested by the accused or insofar as directed to do so by the court.[69]

[64] *DeWeese*, 117 Wn.2d at 378; *State v. Canedo-Astorga*, 79 Wn. App. 518, 525, 903 P.2d 500 (1995).

[65] *See generally Faretta*, 422 U.S. at 834 n.46.

[66] *Faretta*, 422 U.S. at 834 n.46.

[67] 465 U.S. 168, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984).

[68] 465 U.S. at 178.

[69] ABA Standards for Criminal Justice Prosecution and Defense Function std. 4-3.9 *Obligations of Hybrid and Standby Counsel* (1993).

In each of these descriptions, the role contemplated is one in which counsel acts as an advisor to the accused when requested, but does not in any respect act as an errand runner.

In the second context, however, the question involves the nature and extent of the demands a pro se defendant may make of standby counsel in providing the tools necessary to prepare a meaningful pro se defense. Here, the purpose of standby counsel is dual in nature. First, counsel must perform the purpose for which he or she was appointed by the court, namely to serve the traditional role of providing advice when solicited by the defendant, and being available to resume representation should the defendant request it. In this role, standby counsel must be judicious in working within delineated boundaries so as not to infringe on the defendant's right of self-representation.

But counsel must also provide assistance to the accused, if requested, to aid in the preparation of a pro se defense. Silva claims that this assistance includes support services, including administrative duties and research assistance. But both standby counsel appointed in this case were concerned that to submit to such demands would essentially reduce the role of standby counsel to that of a paralegal assistant, and expose counsel to unreasonable, irrelevant, and time consuming errands and research requests. We are mindful of counsel's concerns and find persuasive the Ninth Circuit's admonishment that a court, when ordering resources for the accused, may take into consideration such issues as "security concerns or 'avoidance of abuse by opportunistic or vacillating defendants.'"[70]

In the rare situations where this issue has arisen in other states, courts have held that research assistance is not

---

[70] *Taylor v. List*, 880 F.2d 1040, 1047 (9th Cir. 1989) (quoting *Milton v. Morris*, 767 F.2d 1443, 1446 (9th Cir. 1985)).

required of standby counsel. In *State v. Fernandez*,[71] the Supreme Court of Connecticut held that under its constitution, a pro se defendant has a right of access to the courts, which can be satisfied by either access to a law library or access to legal information through standby counsel.[72] That legal information is limited, however, to advice from standby counsel on legal and procedural matters.[73] It does not require that standby counsel perform research errands for the pro se litigant. Likewise, in *Aycock v. State*,[74] the Florida Court of Appeals flatly rejected a pro se defendant's similar contention that standby counsel should serve as a law clerk or research assistant.[75]

In *State v. Bebb*, the Washington Supreme Court relied on *Faretta* in holding that standby counsel should provide technical information and be available to represent the accused if he so desires.[76] The court implied, however, that that technical information should take the form of giving advice about procedure, appropriate law books, and research material, rather than actually performing research services for the defendant.[77] In light of these cases and chapter 289-22 WAC,[78] which statutorily requires jails to provide access to legal materials, we hold that unless otherwise ordered by the trial court, standby counsel is not required to actually perform research and errands on behalf of pro se defendants. Rather, their role is, as the term standby "counsel" suggests, one of alerting the accused to

---

[71] 254 Conn. 637, 758 A.2d 842 (2000), *cert. denied*, 532 U.S. 913 (2001).

[72] *Fernandez*, 758 A.2d at 853.

[73] *Fernandez*, 758 A.2d at 853.

[74] 769 So. 2d 523 (Fla. Ct. App. 2000).

[75] 769 So. 2d at 524. *See also State v. Rosales*, 3 Neb. App. 26, 521 N.W.2d 385, 391 (1994) (trial court did not abuse its discretion in limiting standby counsel's role to being present at hearings, but not requiring standby counsel to assist with filing motions, performing research or investigative services).

[76] *Bebb*, 108 Wn.2d at 525.

[77] *Bebb*, 108 Wn.2d at 525.

[78] Promulgated under authority of former RCW 70.48.050 (1986), *repealed by* LAWS OF 1987, ch. 462, § 23. *See* RCW 70.48.180.

matters beneficial to him and providing the accused with legal advice or representation upon request.

To ensure adequate access to the tools necessary to prepare a defense, a trial court may, upon a proper showing, order standby counsel to do any or all of the following:

(1) Act as liaison between the accused and the court or prosecutor in confirming motions, coordinating discovery, interviews, etc.;

(2) Provide forms, including subpoena forms, court forms, etc.;

(3) Assist in securing an investigator, if necessary; and

(4) Any other duties logically associated with appointed counsel that would satisfy the accused's right of access to tools necessary to prepare an adequate pro se defense.

In sum, Silva was provided his constitutional right of access to the resources necessary to prepare a meaningful pro se defense.

Affirmed.

COLEMAN and ELLINGTON, JJ., concur.