IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 74925-1-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| MARK DALE SHEWMAKER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: December 18, 2017 |
| | ) | |

BECKER, J. — The appellant, Mark Shewmaker, represented himself in a trial on charges of molesting his minor daughter, NS. We affirm his conviction.

## FACTS

The victim, NS, was born in 1999. She and her brother, MS, are the minor children of Shewmaker and Jacki Shewmaker. Shewmaker and Jacki divorced in 2000. The children lived with Jacki. Occasionally, Shewmaker came to Jacki's house to supervise them when Jacki was away.

The charges were supported by the testimony of NS that on specific occasions in 2011, Shewmaker forced her to share a bed with him; rubbed her breasts, buttocks, vaginal area, and thighs; forced her to touch his penis; and pulled aside her swimsuit, exposing her crotch. Shewmaker has an adult daughter, AK, from a previous marriage to Robin Shewmaker. AK was allowed to testify that she was also molested by Shewmaker when she was a child. She

testified that Shewmaker forced her to share a bed with him; prohibited her from wearing a bra or underwear to bed; rubbed her breasts, buttocks, and vaginal area; and subjected her to oral sex and other forms of abuse. AK testified that these allegations were investigated in 2002, but charges were dismissed because of her reluctance to appear in court.

Shewmaker's first trial, in which he was pro se with standby counsel, resulted in a mistrial due to a hung jury. In his second trial, he again represented himself, this time without standby counsel. The jury in the second trial convicted him of two counts of child molestation in the first degree. He was sentenced to 80 months' imprisonment.

## PERFORMANCE OF APPOINTED INVESTIGATOR

Shewmaker first contends that the ineffective performance of his appointed investigator prevented him from preparing a meaningful defense. At Shewmaker's request, he was assigned an investigator who was authorized to perform approximately 50 hours of services to aid Shewmaker in his trial preparation. Shewmaker claims that the investigator failed to interview witnesses and instructed Robin to lie about her availability to testify in person.

As a preliminary matter, we note that appellant treats the investigator's alleged misconduct as if it were an undisputed fact. He assigns error in the following way: "Mr. Shewmaker was deprived of the right to meaningful self-representation under the Sixth Amendment and Article I, § 22 where the investigator appointed to assist him refused to conduct an investigation and told a witness to lie to the court and her domestic violence advocate."

2

This assignment of error fails to comply with the requirement in RAP 10.3(a)(4) for a "separate concise statement of each error a party contends was made *by the trial court*, together with the issues pertaining to the assignments of error." (Emphasis added.) By avoiding the requirement to identify action or inaction by the trial court, appellant presents the issue as if it can be decided in the abstract. We take this opportunity to emphasize the importance of making proper assignments of error in an appellant's brief. The role of the appellate court is to review trial court decisions, not to review abstract issues. The rules of appellate procedure are designed to facilitate deciding the law in the context of how the particular issue was brought to the attention of the trial court and how the trial court handled it. Assignments of error must be included in the appellant's brief so that the reviewing court can pinpoint the time and place in the record at which the trial court allegedly committed error, either by ruling or failing to rule. Shewmaker's assignment of error does not allege error by the trial court. And the portions of the record he cites do not support a claim that the court deprived him of his right to meaningful self-representation.

1. Alleged failure to interview witnesses

Shewmaker first contends the investigator refused to conduct an investigation. Specifically, he claims that the investigator failed to carry out interviews with prospective defense witnesses.

Before an investigator was assigned, the prosecutor agreed to facilitate two interviews by Shewmaker of witnesses who were available by telephone on August 10, 2015. On that morning, the parties were in court. Shewmaker

waived his right to interview the two witnesses "at this time" as he was waiting to see if the public defender office would assign an investigator who could help him with the interviews.[1] The trial court warned Shewmaker there was no guarantee an investigator would be able to conduct the interviews at a later date and if he declined to go forward with the interviews arranged for that morning, he risked losing his opportunity to conduct the interviews. Shewmaker confirmed that he was waiving his right to interview the witnesses and if an investigator was not assigned or could not do the interviews, he would "proceed at the court's discretion."[2]

After an investigator was assigned to assist him, Shewmaker raised concerns about the investigator's performance in a hearing on November 30, 2015. Shewmaker said he had completed all his discovery and witness interviews, but he complained that the investigator spent very little time with him and he needed the investigator to help him locate defense witnesses and serve subpoenas on them.[3] The trial court pointed out that Shewmaker had phone privileges that would allow him to contact the witnesses himself. Shewmaker said he was too embarrassed to call them. The trial court suggested that Shewmaker should get over his embarrassment. As the discussion went on, the problem of contacting witnesses worked itself out as it became clear that the State was going to subpoena some of the witnesses and Shewmaker lacked any

---

[1] Report of Proceedings (Aug. 10, 2015) at 252-53.
[2] Report of Proceedings (Aug. 10, 2015) at 254-55.
[3] Report of Proceedings (Nov. 30, 2015) at 398-402.

basis for expecting others to give relevant and admissible testimony or else had no idea how to find them.[4]

So far as the record reveals, there was no further discussion of the investigator's alleged refusal to assist with investigation. Shewmaker does not explain what he thinks the trial court should have done differently on August 10, 2015, or on November 30, 2015.

### 2. Alleged instruction to lie

Shewmaker's second contention, that the investigator instructed a witness to lie, is based on events that occurred during trial, on December 15 and 16, 2015. Shewmaker had subpoenaed his ex-wife Robin, the mother of AK. The State had learned from victim advocate Wendy Ross that Robin, who was in Oak Harbor, did not drive and did not want to take a cab or ride with a detective. On December 15, Ross was sworn in and asked to describe her recent telephone conversations with Robin. According to Ross, Robin said she had a long standing agoraphobic disorder that made her fearful and hysterical to the point of being almost suicidal at the prospect of leaving her home. Robin hoped that rather than coming to court in person, she could testify by Skype, a telecommunications application that facilitates video and audio conference calls using the internet.[5]

Shewmaker asked the court to issue a material witness warrant for Robin. The court declined, finding nothing material in Shewmaker's lengthy description

---

[4] Report of Proceedings (Nov. 30, 2015) at 410-14.
[5] Report of Proceedings (Dec. 15, 2015) at 1757-59.

of Robin's expected testimony. The court told Shewmaker it was up to him to figure out how to get his witness to court the next day. That evening, Shewmaker asked the investigator to drive to Oak Harbor to pick up Robin and bring her to court.

The next morning, Ross informed the court that the previous evening, she had received a call from Robin, reporting that she had just received a call from the investigator. Ross said Robin told her the investigator said Oak Harbor was too far away for him to travel and she should just say she told him she refused to come.[6] At this point, the trial judge said that she had already reconsidered her previous ruling that Shewmaker had to get Robin to court to give her testimony. The judge said she had informed Robin by e-mail at 8:45 a.m. that she could fulfill her obligation under the subpoena by testifying via Skype.[7] Shewmaker does not assign error to this decision.

The judge said her decision to let Robin testify by Skype was not affected by Ross' account of what Robin said about the investigator telling her what to say. The prosecutor asked if the court was "inclined to require any information from the defense investigator about the conversation." The judge responded "No. Again, that does not impact this trial because I made my decision and informed Ms. Shewmaker of that before I heard what he said to her. It doesn't change my position. It doesn't change her availability because she's always said she's been available for Skype."[8]

---

[6] Report of Proceedings (Dec. 16, 2015) at 1827-32.
[7] Report of Proceedings (Dec. 16, 2015) at 1828.
[8] Report of Proceedings (Dec. 16, 2015) at 1832.

6

This record shows there is no basis for Shewmaker's assertion that his investigator's misconduct deprived him of a meaningful right to self-defense. The trial court was provided with hearsay information that the investigator instructed Robin to say she refused an offer of transportation to the courthouse. The trial court found it was unnecessary to look into that issue further because it was moot. Regardless of what Robin and the investigator said to each other, the most Shewmaker was entitled to was to present Robin's testimony by Skype, and that opportunity was afforded to him.

Shewmaker argues that the investigator's alleged misconduct entitles him to a new trial. His argument is based on State v. Silva, 107 Wn. App. 605, 613, 27 P.3d 663 (2001). The pro se defendant in Silva was in custody pretrial and during trial. The defendant appealed his conviction to this court, arguing that the trial court erred by failing to ensure that he had access to an investigator. We recognized that under article I, section 22 of the Washington State Constitution, a pretrial detainee who has exercised his constitutional right to represent himself must be afforded a right of reasonable access to State provided resources that will enable him to prepare a meaningful pro se defense. Silva, 107 Wn. App. at 622. We recognized that access to an investigator might be required in some cases, but it was not an absolute right. The defendant in Silva did not show he was prejudiced by the lack of an investigator:

> There is no authority holding that the right of self-representation embodies a right to have an investigator assigned to the defendant. This is not to say that the services of an investigator may never be constitutionally required. Whether an investigator must be appointed to ensure adequate preparation of a meaningful pro se defense must be determined by the trial court after considering the

7

needs of the case. The record in this case does not establish that Silva needed an investigator to prepare his defense, nor has Silva demonstrated that he was prejudiced by the lack of one. We therefore decline to hold that Silva was deprived of adequate resources on this basis.

Silva, 107 Wn. App. at 624.

Shewmaker similarly fails to establish that he was prejudiced by the allegedly deficient performance of his investigator. He does not demonstrate that his defense was prejudicially impacted by the investigator's alleged refusal to locate witnesses or by the investigator's alleged effort to get Robin to lie and say she refused to let the investigator give her a ride to court.

At oral argument, Shewmaker asserted that Robin's statement to Ross that the investigator instructed her to lie was such serious evidence of misconduct that it should be considered structural error. A structural error necessarily renders a trial unfair and is thus subject to automatic reversal without considering whether the error was harmless. Neder v. United States, 527 U.S. 1, 8-9, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999). Structural error has been found in a very limited class of cases involving constitutional error. Neder, 527 U.S. at 8. This case does not belong in that class. A showing of prejudice is required in any ineffective assistance of counsel claim. Strickland v. Washington, 466 U.S. 668, 691, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691. It would be anomalous to have a different rule for investigators. This court requires a showing of prejudice as a predicate for a claim of

8

deprivation of the right to State provided resources necessary to prepare a meaningful pro se defense. Silva, 107 Wn. App. at 624. Because Shewmaker has failed to show prejudice, his assignment of error pertaining to the investigator's performance is denied.

PRIOR ACTS

Shewmaker next claims that the trial court erred by admitting three separate categories of prior bad act evidence: (1) AK's testimony that she was molested by Shewmaker 15 years earlier, introduced to establish a common scheme; (2) testimony that Shewmaker physically abused AK, subjected her to oral sex, and made her watch as he raped Jacki; and (3) MS's testimony that he and the family dog were physically abused by Shewmaker.

Shewmaker opened the door to the evidence of prior acts. "'A party who is the first to raise a particular subject at trial may open the door to evidence offered to explain, clarify, or contradict the party's evidence.'" State v. Jones, 144 Wn. App. 284, 298, 183 P.3d 307 (2008), quoting 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 103.14, at 66-67 (5th ed. 2007). Before opening statements, Shewmaker requested that all of AK's allegations, including forced oral sex, be admitted. In his opening remarks, Shewmaker acknowledged that he had abused his son and the dog. And he admitted that he had been accused of molesting AK. After Shewmaker informed the court that he planned to refer to the alleged rape of Jacki, the trial court ruled the door had been opened for the State to raise the issue as well. Because

Shewmaker opened the door to the challenged evidence, he cannot now be heard to argue the court erred by admitting it.

Even if Shewmaker had not opened the door to evidence of his prior bad acts, he does not demonstrate that the court erred by admitting it.

Shewmaker contends the trial court misinterpreted the standard for weighing probative value against prejudice. The interpretation of an evidentiary rule is reviewed de novo as a question of law. State v. DeVincentis, 150 Wn.2d 11, 17, 74 P.3d 119 (2003). Admission of evidence is reviewed for abuse of discretion. DeVincentis, 150 Wn.2d at 17.

Testimony that Shewmaker molested AK was properly admitted under the ER 404(b) exception for evidence establishing a common scheme or plan. The facts are similar to the facts in DeVincentis. Consistent with DeVincentis, the trial court found that AK's allegations were established by a preponderance of the evidence, they established a common scheme or plan, the acts of molestation she alleged were substantially similar to the acts alleged by NS, and the evidence was substantially more probative than prejudicial. The record provides no reason to doubt that the trial court knew that evidence of prior sexual misconduct can be highly prejudicial. In this case, it was also highly probative. We find no error in the court's interpretation and application of the evidentiary rules.

PROSECUTORIAL MISCONDUCT

Shewmaker next alleges prosecutorial misconduct. In each instance of alleged misconduct, Shewmaker failed to object. Failure to object to misconduct in the trial court constitutes waiver on appeal unless the misconduct is so flagrant and ill-intentioned that it evinces an enduring and resulting prejudice incurable by a jury instruction. State v. Fisher, 165 Wn.2d 727, 747, 202 P.3d 937 (2009).

First, during voir dire, the prosecutor asked prospective members of the jury whether they could think of a strategic reason why someone might choose to be self-represented in a case of child molestation. Receiving no response, the prosecutor prompted by asking who would be questioning the alleged victim. On the third try, this question elicited the answer, "the one who is accused of doing the act is the one who is questioning them."[9] The prosecutor moved on to a new line of questioning.

Voir dire that tends to suggest a defendant has questionable motives for acting pro se may impinge on the right of self-representation. But the State has the right to ask questions designed to assure that jurors are not prejudiced against either party. We cannot say on this record that the prosecutor's questions crossed the line from eliciting bias to evoking it. If Shewmaker had objected, any prejudice could have been cured by an instruction.

The second instance of alleged misconduct occurred during the testimony of Tami Beck. NS had disclosed Shewmaker's abusive conduct to Beck, who was the mother of a friend of NS. On redirect examination, Beck admitted that

---

[9] Report of Proceedings (Dec. 3, 2015) at 766-67.

11

she was a rape victim herself. Shewmaker argues that the State intentionally elicited this statement from Beck in an impermissible effort to bolster her credibility. Even assuming this to be so, the jury could have been instructed to disregard her remark had Shewmaker objected.

The third instance occurred when the State called Beck as a rebuttal witness. Shewmaker's defense rested on the theory that his ex-wives, children, and Beck were conspiring against him. Anticipating that Shewmaker would argue in closing that Beck learned of AK's allegations from NS, the prosecutor notified the court that Beck would be called on rebuttal to testify that she had learned of AK's allegations from Jacki. The trial court ruled Beck's testimony was admissible, and Shewmaker declined a limiting instruction. Shewmaker argues that the prosecutor's questions to Beck distracted the jurors. This is unlikely. Shewmaker fails to demonstrate any prejudice that an instruction could not have cured.

In summary, we reject the claim of prosecutorial misconduct. We also reject Shewmaker's claim of cumulative error. The doctrine of cumulative error does not apply where the errors are few and have little or no effect on the outcome of the trial. State v. Weber, 159 Wn.2d 252, 279, 149 P.3d 646 (2006), cert. denied, 551 U.S. 1137 (2007).

Shewmaker raises seven additional grounds for review under RAP 10.10. Having examined the portions of the record pertaining to each ground, we conclude none of them warrant appellate review. There is no reason to suppose the trial court erred in its rulings.

Affirmed.

Becker, J.

WE CONCUR:

Leach, J.

Cox, J.