FILED
COURT OF APPEALS
DIVISION II

2013 FEB 26 AM 10: 19

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 41133-4-II |
| Respondent, | |
| v. | |
| JAMES PHILIP DOUGLAS, | PUBLISHED IN PART OPINION |
| Appellant. | |

QUINN-BRINTNALL, J. — After this court remanded for a new trial, a jury found James Philip Douglas guilty of first degree arson, residential burglary, and felony violation of a protection order. The jury also found the existence of aggravating factors. Douglas, who proceeded pro se, was sentenced to 480 months—419 months more than his original 61-month sentence. Douglas appeals, alleging that under RCW 9.94A.537(2), the State did not have the statutory authority to seek an exceptional sentence.[1] We hold that RCW 9.94A.537(2) does not apply to sentencing hearings on remand following a new trial and that the State had statutory authority to seek an exceptional sentence and affirm.

_____

[1] Douglas raises 4 additional issues in his opening brief and 16 additional issues in his statement of additional grounds (SAG). RAP 10.10. Because they have no precedential value, we address the remainder of his issues in the unpublished portion of our opinion.

No. 41133-4-II

## FACTS

SUBSTANTIVE FACTS

Debra and James Douglas married in September 2002. In September 2003, their daughter A.[2] was born. Approximately three weeks later, Debra[3] took A. and moved in with her parents, Carroll and Pauline Pederson. Shortly after Debra moved in with the Pedersons, her parents took over the custody exchanges with Douglas. The custody exchanges became increasingly contentious. On July 25, 2004, Douglas assaulted Carroll and Pauline during a custody exchange in the parking lot of the Bonney Lake Police Department. The State charged Douglas with second degree assault and fourth degree assault. A domestic violence no-contact order protecting Carroll and Pauline was entered against Douglas.

On October 10, 2004, while the family was at church, the fire department responded to a fire and explosion at the Pedersons' home. The front window of the house had been blown out onto the front lawn. The explosion had also blown out one of the bedroom walls. The fire investigator determined that the interior of the house had been soaked with gasoline and that the fire was started by a delayed ignition device in the laundry room. The fire investigator also found gas cans and gas can spouts throughout the house and in the garage.

On November 1, 2004, the State charged Douglas with one count of first degree arson. RCW 9A.48.020(1)(a). On May 11, 2005, the State filed an amended information charging Douglas with one count of first degree arson, one count of residential burglary, and one count of felony violation of a protection order (arson-related charges). RCW 9A.48.020(1)(a); former

---

[2] We refer to Douglas' and Debra's minor child by an initial to protect her privacy.

[3] For clarity, we refer to Debra Douglas, Carroll Pederson, and Pauline Pederson by their first names. We intend no disrespect.

2

No. 41133-4-II

RCW 9A.52.025 (1989); RCW 26.52.020. The State alleged the following aggravating factors on the first degree arson and residential burglary:

> (i) the offense was part of an ongoing pattern of psychological, physical, or sexual abuse of the victim manifested by multiple incidents over a prolonged period of time; (ii) the offense occurred within sight or sound of the victim's or the offender's minor children under the age of eighteen years; or (iii) the offender's conduct during the commission of the current offense manifested deliberate cruelty or intimidation of the victim AND/OR the offense involved an invasion of the victim's privacy AND/OR the offense was committed shortly after the defendant was released from incarceration.

Clerk's Papers (CP) at 844, 845. The State also alleged that the classification of the domestic violence court order violation was increased because

> the conduct which constituted said violation of the court order was reckless and did create a substantial risk of death or serious injury to another person.

CP at 845.

The trial court joined the assault-related and arson-related charges for trial. The jury found Douglas guilty on all counts as charged. *State v. Douglas*, noted at 146 Wn. App. 1046, 2008 WL 4062794, at *4-5. In an unpublished opinion issued on September 3, 2008, we reversed Douglas's arson-related convictions based on ineffective assistance of counsel, affirmed his assault-related convictions, and remanded. *Douglas*, noted at 146 Wn. App. 1046.[4]

PROCEDURAL FACTS

On November 21, 2008, the State set a new trial date for the arson-related charges. On December 1, 2008, Douglas moved to proceed pro se. After a lengthy colloquy, the trial court granted Douglas's motion to proceed pro se with standby counsel.

---

[4] After remand, the assault-related charges were severed from the arson-related charges. *State v. Douglas*, noted at 160 Wn. App. 1016, 2011 WL 704879, at *1 (*Douglas* II). On March 27, 2009, Douglas was resentenced on the assault-related charges. *Douglas* II, 2011 WL 704879, at *1. On March 1, 2011, we affirmed Douglas's sentence. *Douglas* II, 2011 WL 704879, at *5.

3

Jury selection in Douglas's second trial began on July 13, 2009. On July 14, Douglas was attacked in the jail. Douglas appeared in court with a black eye and told the trial court that he had hit his head and probably had a concussion. Observing that Douglas appeared to be dazed, the trial court recessed the trial until July 17 to give Douglas time to decide if he would be able to continue picking a jury the following Monday. On July 17, Douglas told the trial court that he was not prepared to go forward with his trial. Trial recessed until Monday, but the trial judge stated, "If this case can't get started on Tuesday, I think we've run out of time." Report of Proceedings (RP) (July 17, 2009) at 253.

On July 20, Douglas told the court that he was still not ready to go to trial. Because of scheduling issues, the case would have been recessed for approximately four weeks. Over Douglas's objection, the trial court declared a mistrial. The case was then assigned to a different department to set a new trial date.

On August 4, 2009, Douglas's next court appearance, standby counsel moved to withdraw. The trial court continued the motion until Douglas's next court appearance. Citing his recent head injury, the State also moved to have Douglas undergo a competency evaluation at Western State Hospital (WSH). The trial court granted the State's motion, over Douglas's objection. On August 24, 2009, the trial court found Douglas competent. The trial court also granted standby counsel's motion to withdraw.

On September 29, 2009, Douglas requested that an attorney be appointed from Department of Assigned Counsel's (DAC) conflict pool. The trial court ordered an attorney be appointed from that pool. On October 8, 2009, Douglas's trial was continued to allow the new attorney an opportunity to prepare. On December 29, 2009, the trial court allowed another

substitution of counsel because Douglas's current counsel started a new job. The trial was continued again to allow Douglas's new counsel time to prepare.

On May 4, 2010, Douglas's appointed counsel requested that Douglas undergo another competency evaluation at WSH. The trial court granted defense counsel's request. The trial court found Douglas competent again on May 19, 2010. On May 26, 2010, Douglas again requested to proceed pro se. Although the judge expressed concerns about Douglas's ability to represent himself, she conducted a colloquy and granted Douglas's request to be allowed to proceed pro se.

On June 30, 2010, the trial commenced. Because the State alleged that Douglas's offenses were part of an ongoing pattern of abuse, the trial court bifurcated the trial under RCW 9.94A.537(4) to avoid unduly prejudicing the jury.[5] On August 17, 2010, the jury found Douglas guilty of first degree arson, residential burglary, and felony violation of a protection order. After the jury returned the verdicts, Douglas requested that the trial court appoint counsel for the aggravating factor phase of trial. The State objected, arguing that reappointing counsel would likely require a continuance and that the jury had already been on the case for two months. The State also expressed concern that Douglas would not work with counsel, resulting in another motion to proceed pro se. After an extensive colloquy with Douglas, the trial court determined that Douglas was not willing to give control of the case to an attorney and refused to reappoint

---

[5] At both the trial court and in their briefing before us, the parties refer to the separate proceedings as the "guilt phase" and the "sentencing phase" of trial. Unlike in the sentencing or penalty phase of a death penalty case, the term "sentencing phase" is not accurate because the jury is not deciding or imposing a sentence. Therefore, we refer to the second phase of Douglas's trial as the aggravating factor phase.

counsel. At that point, Douglas refused to further participate in the case and voluntarily absented himself from the aggravating factor phase of his trial.

On August 19, 2010, the jury found that the arson and residential burglary were part of an ongoing pattern of abuse against Carroll, Pauline, and Debra. The jury also found that the arson was committed with deliberate cruelty.

At sentencing, the State calculated Douglas's offender score at 5 for the arson, 4 for the residential burglary, and 4 for the felony violation of the protection order. Douglas's standard sentencing range was 46 to 61 months on the arson, 15 to 20 months on the residential burglary, and 22 to 29 months on the violation of the domestic violence protection order. At sentencing, Douglas challenged the deliberate cruelty finding. The trial court determined that the State properly calculated Douglas's offender score and sentenced Douglas to an exceptional sentence totaling 480 months. The trial court specifically stated that it was not considering the deliberate cruelty finding and that it would have imposed the same sentence even if the jury had not found deliberate cruelty. Douglas timely appeals his conviction and his exceptional sentence.

## ANALYSIS

### EXCEPTIONAL SENTENCE

Douglas argues that the State did not have statutory authority to seek an exceptional sentence because Douglas was not given an exceptional sentence at his first trial. Douglas cites RCW 9.94A.537(2) to support his position, which states,

> In any case where an exceptional sentence above the standard range was imposed and where a new sentencing hearing is required, the superior court may impanel a jury to consider any alleged aggravating circumstances listed in RCW 9.94A.535(3), that were relied upon by the superior court in imposing the previous sentence, at the new sentencing hearing.

Douglas reasons that because his retrial ultimately resulted in a resentencing, the State could only empanel a jury to find aggravating factors if the aggravating factors had previously been used to impose an exceptional sentence at his first sentencing hearing. The State contends that RCW 9.94A.537(2) applies only to resentencing hearings required because of a *Blakely*[6] error but not sentencing following a new trial. We agree with the State's reading of RCW 9.94A.537(2).

Douglas argues that the plain language of RCW 9.94A.537(2) deprives the State of the statutory authority to seek an exceptional sentence in this case. But Douglas is mistaken; the plain language of RCW 9.94A.537(2) demonstrates that it does not apply to Douglas's case. The first clause of RCW 9.94A.537(2) establishes the circumstances both of which must be present for the statute to apply. First, an exceptional sentence must have been imposed; second, a new sentencing hearing must be required. RCW 9.94A.537(2). Here, an exceptional sentence was not imposed after Douglas's first trial.

Moreover, Douglas cites no authority supporting his interpretation of RCW 9.94A.537(2) or his proposition that a sentencing hearing following a new trial is a resentencing hearing. He also fails to cite any additional authority supporting his position that the State is barred from seeking an exceptional sentence on retrial when the aggravating factors were alleged in the original information. Accordingly, we hold that RCW 9.94A.537(2) does not bar the State from seeking an exceptional sentence in a case that has been remanded for a new trial, even if an exceptional sentence was requested but not imposed following a previous trial.

---

[6] *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

RIGHT TO COUNSEL AT AGGRAVATING FACTOR PHASE OF TRIAL

Douglas next argues that he was denied his Sixth Amendment right to counsel when the trial court refused to reappoint counsel for the aggravating factor phase of his trial. As an initial matter, Douglas urges this court to adopt a per se rule that counsel must be appointed for sentencing if the defendant requests it. Douglas cites exclusively to federal law to support this proposition. Br. of Appellant at 15 (citing *United States v. Fazzini*, 871 F.2d 635 (7th Cir. 1989); *United States v. Holmen*, 586 F.2d 322 (4th Cir. 1978)). But the cases Douglas cites do not support his position because Douglas requested counsel midtrial rather than at a sentencing hearing.[7] Instead, as the State correctly points out, under Washington law, once a defendant has asserted his right to represent himself and made a knowing, voluntary, and intelligent waiver of counsel, a criminal defendant is no longer entitled to reappointment of counsel. *State v. DeWeese*, 117 Wn.2d 369, 379, 816 P.2d 1 (1991).

After a defendant's valid waiver of counsel, the reappointment of counsel is within the trial court's discretion. *DeWeese*, 117 Wn.2d at 379. When deciding whether to reappoint

---

[7] In *Fazzini*, the court determined that "a defendant's express revocation of an earlier waiver upon the commencement of a new phase of the trial requires at least an inquiry by the district judge into the defendant's representational desires." 871 F.2d at 643. Here, Douglas's request was made in the middle of trial. Furthermore, the trial court did inquire into Douglas's "representational desires" and determined that appointing new counsel was inappropriate. Therefore, *Fazzini* does not support Douglas's assertion that he should be *entitled* to reappointment of counsel. Similarly, in *Holman*, the Fourth Circuit agreed that the trial court erred when it refused to reappoint counsel after the conclusion of a bench trial but prior to sentencing. 586 F.2d at 324.

counsel, the trial court may take into account all existing circumstances. *State v. Modica*, 136 Wn. App. 434, 443, 149 P.3d 446 (2006) (citing *State v. Canedo-Astorga*, 79 Wn. App. 518, 525, 903 P.2d 500 (1995), *review denied*, 128 Wn.2d 1025 (1996)), *aff'd*, 164 Wn.2d 83, 186 P.3d 1062 (2008). "[T]he degree of discretion reposing in the trial court is at its greatest when a request for reappointment of counsel is made after trial has begun." *Modica*, 136 Wn. App. at 443-44.

Here, the trial court did not abuse its discretion when it refused to reappoint counsel for Douglas for the aggravating factor phase of his trial. Douglas argues that the trial court erred by making its decision based on its finding that Douglas would be unwilling to give up control of the case to an attorney. Douglas asserts that the only condition he placed on accepting new counsel was that the attorney be effective, which is his constitutional right. However, the record belies Douglas's assertion. Douglas had already fired two attorneys for being "ineffective," although the attorney's alleged ineffectiveness was limited to a disagreement about trial strategy. Douglas regularly made it clear that he believed he was the most capable to handle his case, and his only dissatisfaction was the difficulty he faced acting as his own attorney while in jail. *See DeWeese*, 117 Wn.2d at 378 (defendant was not entitled to reappointment of counsel after he refused to accept professional advice from his two previous attorneys).

Even if Douglas had allowed counsel to control the case, appointment of counsel would have caused an excessive delay in a case that had already been in trial for approximately two months. Because Douglas refused to accept a DAC attorney, any counsel would have to be appointed from the DAC conflict pool. Furthermore, counsel would likely need additional time to prepare for the aggravating factor phase of Douglas's trial. Douglas requested counsel in the middle of his trial, Douglas's request would have resulted in a significant delay while new

counsel prepared, and, based on Douglas's prior conduct, the trial court had reason to believe reappointing counsel would result in another motion to proceed pro se. Accordingly, the trial court's decision does not rest on untenable grounds or reasons and the trial court did not abuse its discretion by denying Douglas's request for counsel for the aggravating factor phase of his trial. *Modica*, 136 Wn. App. at 443.

DELIBERATE CRUELTY INSTRUCTION

Douglas argues for the first time on appeal that the trial court erred by failing to give an instruction defining deliberate cruelty during the sentencing phase of the trial thereby relieving the State of its burden to prove all elements of the aggravating factor beyond a reasonable doubt. 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 300.10, at 704 (3d ed. 2008) (WPIC).[8] The State argues that Douglas waived his objection by failing to object to the jury instructions at trial because he voluntarily absented himself from the aggravating factor phase of his trial. When a criminal defendant is voluntarily absent from trial, the court is permitted to proceed without the defendant's presence. CrR 3.4(b). Therefore, Douglas's absence from the aggravating factor phase of trial does not excuse his failure to object to the jury instructions in the aggravating factor phase of trial. But Douglas contends that he can challenge this instructional error for the first time on appeal.

We may refuse to review any claim of error not raised in the trial court. However, a party may raise an error for the first time on appeal if it is a manifest error affecting a constitutional

---

[8] WPIC 300.10 states,

> "Deliberate cruelty" means gratuitous violence or other conduct which inflicts physical, psychological, or emotional pain as an end in itself, and which goes beyond what is inherent in the elements of the crime [or is normally associated with the commission of the crime].

No. 41133-4-II

right. As this court recently held in *State v. Grimes*, 165 Wn. App. 172, 185-86, 267 P.3d 454 (2011) (citing *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009)), *review denied*, 175 Wn.2d 1010 (2012), for this RAP 2.5(a)(3) exception to apply, an appellant must show that (1) the error implicates a specifically identified constitutional right, and (2) the error is "manifest" in that it had "practical and identifiable consequences" in the trial below.

Douglas argues that the failure to give the deliberate cruelty instruction was a manifest constitutional error because it relieved the State of its burden to prove all elements of the aggravating circumstance beyond a reasonable doubt. However, our Supreme Court has recently held that failure to further define deliberate cruelty for the purpose of aggravating factors is not an error of constitutional magnitude that can be raised for the first time on appeal. *State v. Gordon*, 172 Wn.2d 671, 677-79, 260 P.3d 884 (2011). Accordingly, Douglas has not presented a manifest error affecting a constitutional right and has waived this issue.

DELIBERATE CRUELTY AS AN AGGRAVATING CIRCUMSTANCE FOR FIRST DEGREE ARSON

Douglas argues that an exceptional sentence for arson cannot be based on deliberate cruelty because Douglas's actions were not cruel beyond what is normally associated with first degree arson. The State argues that the entire context of Douglas's actions and the concentration of gasoline in A.'s crib demonstrated deliberate cruelty. Douglas is correct that the facts of this case do not justify deliberate cruelty as an aggravating factor for first degree arson. However, the trial court did not rely on the deliberate cruelty finding when imposing Douglas's exceptional sentence.

A trial court may impose a sentence outside the standard sentencing range if it finds that substantial and compelling reasons justify an exceptional sentence. RCW 9.94A.535. We review the trial court's findings of fact made in support of an exceptional sentence under the

11

clearly erroneous standard. *State v. Branch*, 129 Wn.2d 635, 646, 919 P.2d 1228 (1996). Under that standard, reversal is required only if the findings are not supported by substantial evidence. *Branch*, 129 Wn.2d at 646.

To justify an exceptional sentence based on deliberate cruelty, the cruelty must go beyond that normally associated with the commission of the charged offense or inherent in the elements of the offense that were already contemplated by the legislature in establishing the standard range. *State v. Tili*, 148 Wn.2d 350, 369, 60 P.3d 1192 (2003). In *State v. Pockert*, 53 Wn. App. 491, 768 P.2d 504 (1989), Division Three of this court held that because first degree arson requires the defendant to act with malice, deliberate cruelty is not generally a basis for imposing an exceptional sentence. But in certain, particularly egregious circumstances, the defendant's actions justified an exceptional sentence based on deliberate cruelty. *State v. Goodman*, 108 Wn. App. 355, 364, 30 P.3d 516 (2001) (exceptional sentence based on deliberate cruelty was justified when the defendant used the house fire to intentionally kill the victim's dog), *review denied*, 145 Wn.2d 1036 (2002); *State v. Tierney*, 74 Wn. App. 346, 356, 872 P.2d 1145 (1994) (exceptional sentence based on deliberate cruelty was justified because the arson occurred in the course of relentless harassment of the victim), *cert. denied*, 513 U.S. 1172 (1995).

In *Pockert*, the defendant was convicted of first degree arson after burning down his ex-girlfriend's house shortly after the couple broke up. 53 Wn. App. at 493. The trial court imposed an exceptional sentence based, in part, on deliberate cruelty because "Mr. Pockert was extremely agitated because of the breakup of the relationship and was 'getting even' with Ms. McClelland." *Pockert*, 53 Wn. App. at 497. Division Three of this court held that Pockert's

conduct was within the malice element of first degree arson and could not serve as a basis for an exceptional sentence. *Pockert*, 53 Wn. App. at 497.

Douglas was charged with first degree arson pursuant to RCW 9A.48.020(1)(a), which required the State to prove that Douglas "did unlawfully, feloniously, knowingly, and maliciously cause a fire or explosion, which fire or explosion as manifestly dangerous to any human life." CP at 844; *see* RCW 9A.48.020(1)(a). The State argues that Douglas's conduct demonstrated deliberate cruelty because of the amount of gasoline concentrated on A.'s crib and because of the surrounding conflicts with Debra and the Pedersons over the divorce and A.'s custody. The State also references the intensity of the explosion caused by the amount of gasoline in the house. But, ultimately, the facts alleged by the State only demonstrate that Douglas's actions resulted from his anger over Debra leaving with A. Because general anger over the dissolution of a relationship, without more, cannot establish deliberate cruelty under the first degree arson statute, the jury's deliberate cruelty finding is not a substantial and compelling reason for imposing an exceptional sentence. *Pockert*, 53 Wn. App. at 497.

But the trial court did not impose the exceptional sentence based on the jury's deliberate cruelty finding. In addition to deliberate cruelty, the jury also found that the arson was committed as part of an ongoing pattern of domestic violence. When the trial court imposed the exceptional sentence, it stated that it was not considering the jury's deliberate cruelty finding. In addition, the trial court explicitly stated that it would impose the same sentence without the deliberate cruelty finding.

Douglas cites *State v. Smith*, 123 Wn.2d 51, 864 P.2d 1371 (1993), *overruled on other grounds by State v. Hughes*, 154 Wn.2d 118, 110 P.3d 192 (2005), *abrogated by Washington v. Recuenco*, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006), for the proposition that

13

when there is a significant disparity between the standard range and the exceptional sentence, the case should be remanded for resentencing even if there is an explicit indication the same sentence would be imposed on remand. However, Douglas mischaracterizes the holding in *Smith*. In *Smith*, the appellate court explicitly stated that remand was appropriate because "it is unclear whether the trial judge would have imposed the same sentence had he considered only the two valid aggravating factors." 123 Wn.2d at 58. The trial court here was explictly clear that it did not consider the jury's deliberate cruelty finding when imposing Douglas's exceptional sentence and would have imposed the same sentence based on the other aggravating factors. Because we are satisfied that the trial court would have imposed the same sentence based on the valid aggravating factors, remand for resentencing is not warranted. *State v. Jackson*, 150 Wn.2d 251, 276, 76 P.3d 217 (2003) (citing *State v. Gore*, 143 Wn.2d 288, 321, 21 P.3d 262 (2001), *overruled by Hughes*, 154 Wn.2d 118, *abrogated by Recuenco*, 548 U.S. 212). Accordingly, we affirm Douglas's exceptional sentence.

SAME CRIMINAL CONDUCT

Douglas further argues that the trial court improperly calculated his offender score because the first degree arson and the violation of a protection order should have been considered same criminal conduct. Douglas's offender score was calculated based on his three prior offenses—second degree assault, fourth degree assault, and bail jumping—and his current offenses—first degree arson, residential burglary, and violation of a protection order. Douglas's criminal history resulted in an offender score of 5 on the first degree arson, 4 on the residential burglary, and 4 on the violation of a protection order. If the trial court considered the first degree arson and the violation of a protection order the same criminal conduct, Douglas's offender score

14

would have been calculated as 4 on the first degree arson, 3 on the residential burglary, and 3 on the violation of a protection order.

The trial court has the discretion to determine whether current convictions encompass the same criminal conduct for the purposes of calculating the defendant's offender score. RCW 9.94A.589(1)(a). We review the trial court's finding that offenses did not constitute the same criminal conduct for abuse of discretion or misapplication of the law. *State v. Maxfield*, 125 Wn.2d 378, 402, 886 P.2d 123 (1994).

Current offenses can be considered the same criminal conduct if they involved the same intent, were committed at the same time and place, and involved the same victim. "[C]rimes affecting more than one victim cannot encompass the same criminal conduct." *State v. Lessley*, 118 Wn.2d 773, 777, 827 P.2d 996 (1992) (citing *State v. Dunaway*, 109 Wn.2d 207, 215, 743 P.2d 1237, 749 P.2d 160 (1987)). The State essentially concedes that the arson and the violation of the protection order were committed at the same time and place. But it argues the offenses did not involve the same victims. We agree with the State. The trial court did not abuse its discretion by failing to consider the arson and the violation of a protection order as the same criminal conduct.

Douglas argues that the arson and the violation of a protection order involved the same victims because the arson burned the Pedersons' home and the violation of a protection order involved going to the Pedersons' home. But the Pedersons' home was not the victim. As the State correctly points out, the victims of the violation of a protection order were the Pedersons, the people protected by the order. But the victims of the arson were the Pedersons, Debra, and A. Therefore, the violation of a protection order and the arson affected more than one victim not named in the protection order and could not be the same criminal conduct. *See Lessley*, 118

Wn.2d at 778-79 (defendant's crimes involved different victims because the defendant's former girlfriend and her parents were victims of the burglary but only the defendant's former girlfriend was the victim of the kidnapping). Accordingly, the trial court did not abuse its discretion when it counted the arson and the violation of a protection order as separate offenses in calculating Douglas's offender score.

SAG ISSUES[9]

INTERFERENCE WITH RIGHT TO SELF-REPRESENTATION

Douglas also alleges that he was denied appropriate resources to allow him to effectively represent himself. Although Douglas decided to represent himself, DAC was appointed as standby counsel. After the trial court permitted standby counsel to withdraw, it ordered DAC to continue to provide Douglas with access to an investigator, to coordinate service of subpoenas and access to witnesses, and to assist with administrative tasks such as mailing and copying documents. When Douglas made the decision to proceed pro se the second time, the trial court denied Douglas's request for standby counsel, but it ordered DAC to continue to provide services for Douglas.

Throughout Douglas's pro se representation, Douglas repeatedly complained to the trial court that DAC was not complying with the court order to provide services. However, the trial court heard from DAC and Douglas's assigned investigator on multiple occasions and determined that they were sufficiently providing Douglas with the services the court ordered.

---

[9] We have already addressed two of Douglas's SAG issues—reappointment of counsel for the aggravating factor phase of his trial and the jury instructions in the aggravating factor phase of his trial—and Douglas does not offer any additional arguments that warrant our reconsideration of the issues here.

16

Based on the representations DAC made to the court, Douglas was consistently provided with the following services:

> 1. A DAC investigator to contact witnesses, coordinate interviews, and arrange court appearances;
> 2. Access to a DAC intern to serve subpoenas;
> 3. Copying and typing services;
> 4. Materials such as highlighters, paper, and pencils.

In addition to the services provided directly by DAC, the trial court, the jail, and the State also provided services to help facilitate Douglas's defense. In jail, Douglas had access to the inmate phone for contacting witnesses and his assigned investigator. The jail also provided him with access to legal materials and a Westlaw terminal for legal research. During trial, the State provided Douglas with copies of the Washington Court Rules as well as a copy of 5D *Karl B. Tegland, Washington Practice: The Courtroom Handbook on Washington Evidence*. The State also arranged for Douglas to interview all of the witnesses before the witnesses testified at trial. Douglas was told the day before the witnesses were scheduled so he would have an opportunity to prepare to interview the witness.

Article I, section 22 of the Washington Constitution "affords a pretrial detainee who has exercised his constitutional right to represent himself a right of reasonable access to state provided resources that will enable him to prepare a meaningful pro se defense." *State v. Silva*, 107 Wn. App. 605, 622, 27 P.3d 663 (2001). We review a trial court's decision regarding what services are necessary for an abuse of discretion. *See Silva*, 107 Wn. App. at 622-23 ("What measures are necessary or appropriate to constitute reasonable access lie within the sound discretion of the trial court."). When determining what services are appropriate or necessary for a pro se defendant, the trial court should consider all of the circumstances including

17

the nature of the charge, the complexity of the issues involved, the need for investigative services, the orderly administration of justice, the fair allocation of judicial resources (i.e., an accused is not entitled to greater resources than he would otherwise receive if he were represented by appointed counsel), legitimate safety and security concerns, and the conduct of the accused.

*Silva*, 107 Wn. App. at 623 (footnotes omitted).

Douglas correctly notes that *Silva* is on point to resolve this issue. But contrary to Douglas's assertion, Douglas was provided constitutionally adequate resources to prepare his defense under the standard set by *Silva*. In *Silva*, the defendant argued that he was not provided sufficient access to resources because (1) the trial court refused to appoint an investigator, (2) he did not have direct telephone access in the jail, (3) he was denied physical access to a law library and counsel to perform legal research, and (4) he had limited access to witnesses. 107 Wn. App. at 623-24. Silva was granted access to legal materials and a law librarian, regular access to the inmate phone, and aid in serving subpoenas and performing other administrative tasks. *Silva*, 107 Wn. App. at 623-25. Furthermore, the State provided Silva with the opportunity to interview witnesses both pretrial and during trial before the witness's testimony. *Silva*, 107 Wn. App. at 623-25.

Here, Douglas was not only provided with the same access to services as in *Silva*, he was provided with additional services. The trial court authorized the appointment of an investigator and, based on the investigator's representations to the trial court, this investigator not only interviewed witnesses, she attempted to facilitate contact between Douglas and his witnesses, and she coordinated court appearances for witnesses. The investigator also performed additional investigative tasks for Douglas such as mapping and determining drive times between the crime scene and the place in Yakima where Douglas was allegedly camping at the time of the fire. Accordingly, Douglas's claim that he was denied his right to effectively represent himself fails.

18

MISTRIAL

Douglas also argues that the trial court erred when it granted a mistrial after he was injured in jail on the day of jury selection. Douglas also asserts that because the jury was sworn in before the mistrial was granted and the mistrial was error, his retrial was barred by double jeopardy. We review a trial court's decision to grant a mistrial for an abuse of discretion. *State v. Escalona*, 49 Wn. App. 251, 254-55, 742 P.2d 190 (1987) (citing *State v. Weber*, 99 Wn.2d 158, 166, 659 P.2d 1102 (1983)). The trial court did not abuse its discretion when granting a mistrial, and Douglas's claim fails.

Douglas's trial began on July 13, 2009. After Douglas was injured in jail, the trial court granted a mistrial because of (1) the potential prejudice caused by Douglas's visible injury and (2) Douglas's concern about being able to represent himself. The trial court denied Douglas's request to recess the trial until his condition had improved because of the undue delay and inconvenience to the jury. The trial court's decision to grant a mistrial was based on tenable grounds, especially because of the unique concerns caused by Douglas's decision to proceed pro se. Most importantly, Douglas represented to the court that his head injury was causing cognitive problems and interfering with his ability to represent himself. Based on this representation alone, the trial court did not abuse its discretion by declaring a mistrial.

Douglas's second contention, that his retrial was barred by double jeopardy, likewise fails. Jeopardy attaches once a jury is empanelled and sworn. *State v. Robinson*, 146 Wn. App. 471, 478, 191 P.3d 906 (2008). Here, jury selection had only begun. No jury had been selected. Therefore, the jury was not empanelled and sworn at the time the trial court granted the mistrial. Accordingly, jeopardy had not yet attached and double jeopardy did not bar Douglas's trial.

19

APPOINTMENT OF STANDBY COUNSEL

Next, Douglas argues that the trial court erred by refusing to appoint standby counsel after Douglas fired his second attorney and renewed his request to proceed pro se. A defendant proceeding pro se has no constitutional right to standby counsel. *Silva*, 107 Wn. App. at 626. A pro se criminal defendant only has the right to adequate resources to prepare his defense. *Silva*, 107 Wn. App. at 622-23. As we explained above, Douglas was provided constitutionally adequate resources to aid in his defense. The trial court did not err by refusing to appoint standby counsel for Douglas.

IMPROPER ADMISSION OF ER 404(B) EVIDENCE

Douglas argues that the trial court improperly admitted evidence of prior bad acts contrary to ER 404(b) and ER 403. Specifically, he argues that the trial court should have excluded any evidence related to his prior assault against the Pedersons. Further, Douglas argues that because the trial court admitted evidence of the prior assault, he should have been permitted to present evidence related to proving a defense to the assault. Douglas also argues that it was error for the trial court to deny his motion to withdraw the judgment and sentence from Douglas's prior trial, which Douglas originally admitted as an exhibit in his defense. We discern no error.

We review a trial court's ruling admitting evidence of the defendant's other bad acts for an abuse of discretion. *State v. Fisher*, 165 Wn.2d 727, 745, 202 P.3d 937 (2009); *State v. Stein*, 140 Wn. App. 43, 65, 165 P.3d 16 (2007), *review denied*, 163 Wn.2d 1045 (2008). A trial court has broad discretion to weigh the probative value of evidence against its prejudicial effect. *Stein*, 140 Wn. App. at 67. A trial court abuses its discretion if its exercise of discretion is manifestly unreasonable or based on untenable grounds. *Stein*, 140 Wn. App. at 65.

Evidence of crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. ER 404(b). Evidence of crimes, wrongs, or acts may be admissible for proof of motive, intent, or identity "but before a trial court may admit such evidence, it must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect." *State v. Yarbrough*, 151 Wn. App. 66, 81-82, 210 P.3d 1029 (2009) (citing *State v. Vy Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002)).

Evidence of motive is relevant in an arson case. *State v. Young*, 87 Wn.2d 129, 137-38, 550 P.2d 1 (1976). In *Young*, Young set fire to the house in which he and his wife lived. The house was "a barely livable cabin situated next door to his in-laws' comfortable home." *Young*, 87 Wn.2d at 137. The court held that the jury could have inferred "that [the arson] was an act of resentment toward [Young's] wife or toward her parents, or perhaps toward the house itself or his own circumstances." *Young*, 87 Wn.2d at 138.

Here, the State moved to admit evidence of the prior assault on the Pedersons to prove motive. The State's argument was that Douglas set fire to the Pedersons' home in retaliation for Debra leaving, taking A., and for the Pedersons pursuing assault charges against him. The evidence of the prior assault was relevant for proving Douglas set the fire maliciously out of anger and resentment toward Debra and the Pedersons. Furthermore, the State reduced the prejudicial effect of the evidence by (1) limiting the testimony about the assault, specifically the extent of the victim's injuries; and (2) introducing only limited photos of the victims or their resulting injuries. Therefore, the evidence of the prior assault against the Pedersons was not unduly prejudicial and was properly admitted under ER 404(b) and ER 403.

21

Douglas's argument that he should have been permitted to present evidence of a defense to the assault similarly fails. The State properly asserted that it was inappropriate to relitigate the facts of the assault because Douglas had already been convicted and his conviction had been affirmed on appeal. The trial court did not abuse its discretion when it ruled that it would have been improper to relitigate the assault case during the arson trial.

Finally, Douglas argues that the trial court should have permitted him to withdraw his prior judgment and sentence which showed his conviction for the arson-related charges in his first trial. Originally, Douglas moved to admit the unredacted prior judgment and sentence because the prosecutor who signed the judgment and sentence was different than the prosecutor named in the signature block. Douglas's contention was that the judgment and sentence proved the prosecutor's office engaged in misconduct and was railroading him into a conviction. However, after the prosecutor who signed the judgment and sentence testified that it was routine and proper for one prosecutor to sign a document for another prosecutor, Douglas moved to withdraw the prior judgment and sentence. The trial court denied Douglas's motion but granted the State's motion to redact the judgment and sentence. The judgment and sentence was redacted to exclude any mention of the arson-related charges prior to the judgment and sentence being submitted to the jury.

Douglas waived his challenge to the admission of the prior judgment and sentence by inviting the alleged error. The invited error doctrine provides that a party who sets up an error at trial cannot complain of that error on appeal. *State v. Henderson*, 114 Wn.2d 867, 868, 792 P.2d 514 (1990). Douglas is precluded from raising this issue on appeal because he moved to admit the unredacted judgment and sentence. Moreover, any prejudice from the judgment and sentence

was mitigated when the trial court redacted the information related to the arson-related charges.

Accordingly, Douglas's challenges to the admission of ER 404(b) evidence fails.

SAME JURY FOR BOTH PHASES OF TRIAL

In conjunction with his argument that the trial court improperly admitted ER 404(b) evidence, Douglas argues that it was error for the same jury to hear evidence in both the guilt phase and the aggravating factor phase of the trial. Douglas contends that the jury was prejudiced by the admission of the evidence of Douglas's prior assault against the Pedersons. Douglas's contention lacks merit.

RCW 9.94A.537(4) presumes that the State will present evidence proving alleged aggravating circumstances during the trial of the underlying crime. RCW 9.94A.537(4) states,

> Evidence regarding any facts supporting aggravating circumstances under RCW 9.94A.535(3)(a) through (y) shall be presented to the jury during the trial of the alleged crime, unless the jury has been impaneled solely for resentencing, or unless the state alleges the aggravating circumstances listed in RCW 9.94A.535(3)(e)(iv), (h)(i), (o), or (t). If one of these aggravating circumstances is alleged, the trial court may conduct a separate proceeding if the evidence supporting the aggravating fact is not part of the res gestae of the charged crime, if the evidence is not otherwise admissible in trial of the charged crime, and if the court finds that the probative value of the evidence to the aggravated fact is substantially outweighed by its prejudicial effect on the jury's ability to determine guilt or innocence for the underlying crime.

Here, the State alleged the current offense involved an ongoing pattern of domestic violence under RCW 9.94A.535(3)(h)(i).

No. 41133-4-II

RCW 9.94A.537(4) provides for different phases of trial; it does not provide for different juries. Douglas has not presented any basis for his assertion that he should have had different juries for each phase of the trial. Accordingly, Douglas's claim fails.[10]

CARROLL'S PRIOR INCONSISTENT STATEMENTS

Douglas next argues that the trial court erred when it refused to allow him to introduce evidence of Carroll's prior inconsistent statements. However, because Carroll's trial testimony was not inconsistent with the statement Douglas attempted to introduce, the trial court did not err by refusing to admit the statement.

During trial, Douglas extensively cross-examined Carroll about the events leading up to the prior assault. In his trial testimony, Carroll stated that he was not refusing to allow Douglas to take A., only that Douglas needed to wait until they checked the boxes of Debra's belongings, and Douglas needed to calm down before Carroll would give A. to Douglas. Douglas repeatedly asked Carroll if he had refused to allow Douglas to take A. for visitation. Carroll repeatedly answered that he told Douglas that he would let Douglas take A. once Debra's things were inspected and Douglas calmed down. Douglas attempted to introduce the statement Carroll gave police after the assault because in it Carroll used the phrase "'we would not give [A.] to him.'" SAG at 16.

Under ER 613(b),

---

[10] Douglas also argues that the evidence introduced to prove the pattern of domestic violence was inadmissible under ER 404(b). But evidence of Douglas's treatment of Carroll, Pauline, and Debra is direct evidence proving the pattern of domestic violence, not improper character evidence. Although this contention has no merit, we note that Douglas waived challenges to the evidence presented during the aggravating factor phase of the trial because he voluntarily absented himself by refusing to attend court.

24

> [e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require.

We review a trial court's evidentiary rulings for an abuse of discretion. *State v. Johnson*, 90 Wn. App. 54, 69, 950 P.2d 981 (1998). A trial court abuses its discretion by making a decision based on untenable grounds or for untenable reasons. *Johnson*, 90 Wn. App. at 69.

Douglas argues that the trial court erred by not admitting Carroll's prior statement to the police because Carroll's statement to the police was inconsistent with his testimony. But Douglas mischaracterizes Carroll's statements. Although Carroll used a slightly different phrase in his police statement, his police statement was not substantively inconsistent with his trial testimony. Because Carroll's prior statement to police was not inconsistent, it was not error for the trial court to refuse to admit the statement under ER 613.

WSH COMPETENCY EVALUATIONS

Douglas argues that the trial court violated his due process rights by ordering him to undergo competency evaluations at WSH over Douglas's objections. Because the trial court has a duty to establish a defendant's competency, there was no error.

Due process requires that a criminal defendant be competent to stand trial. *State v. Heddrick*, 166 Wn.2d 898, 903, 215 P.3d 201 (2009). If the trial court has reason to doubt a defendant's competency, the trial court must determine that the defendant is competent to stand trial. *Heddrick*, 166 Wn.2d at 904; former RCW 10.77.060 (2004). Although the defendant may waive the *procedural* requirements to determine competency, the defendant may not waive a substantive determination of competency. *Heddrick*, 166 Wn.2d at 905.

25

Both times the trial court ordered competency evaluations for Douglas, the trial court was presented with reason to doubt Douglas's competency to stand trial and was required to determine Douglas's competency to proceed. Because Douglas could not waive a substantive determination of his competency, the trial court properly ordered WSH to conduct competency evaluations, even over Douglas's objections. Contrary to Douglas's assertion, ordering the competency evaluations was in furtherance of, not in violation of, Douglas's due process rights. *Heddrick*, 166 Wn.2d at 904.

EVIDENTIARY HEARING

Douglas further argues that the trial court erred by failing to hold an "evidentiary hearing" that he repeatedly requested. Douglas cites specifically to the "Motion to Compel Evidentiary Hearing" he filed on June 29, 2009. CP at 170. Douglas alleges five reasons why an evidentiary hearing was necessary: (1) the original motion for an evidentiary hearing filed by substitute counsel in his first trial was not heard, (2) at some point subpoenas he had submitted to the court were changed after the judge signed them, (3) standby counsel had a conflict of interest, (4) there were problems with the transfer of files from his previous attorney, and (5) he could not contact witnesses and was not receiving DAC aid.[11] Ultimately, all of these issues are moot, were already resolved at the trial court, or are irrelevant. Therefore, there were no grounds for the trial court to hold a specific evidentiary hearing.

---

[11] At almost every court hearing, Douglas references his request for an evidentiary hearing. It is often unclear what Douglas is referring to or why he believes an evidentiary hearing is appropriate or necessary. Therefore, we only discuss the facts and arguments directly related to Douglas's "Motion to Compel Evidentiary Hearing" or arguments Douglas made explicitly in his SAG.

26

First, Douglas argues that the trial court was required to hold an evidentiary hearing because the trial court did not hold one when originally requested by substitute counsel at Douglas's original trial. This is irrelevant. After Douglas's original trial, Douglas's substitute counsel filed a motion for an evidentiary hearing to investigate the allegations of misconduct Douglas made against his trial attorney. But we overturned his arson, burglary, and violation of the protection order charges based on ineffective assistance of counsel and there is no reason why an additional evidentiary hearing into Douglas's original trial attorney's conduct should be held. Douglas argues that because we affirmed his convictions for assault and bail jumping, the issue was still relevant. But the assault and bail jumping charges are not before us in this appeal nor were they before the trial court when Douglas made his request for an evidentiary hearing.

Second, Douglas argues that an evidentiary hearing was necessary because someone at DAC changed the names of the people Douglas subpoenaed and the evidentiary hearing was necessary to "investigate this disparity of justice . . . and bring the guilty party to justice and allay any further attempts to delay proceedings and tamper with defenses [sic] witnesses and/or evidence in this case." CP at 171. Needless to say, an evidentiary hearing is not the appropriate venue for investigating criminal activity. Furthermore, the subpoenas were properly resubmitted, signed, and served before Douglas's actual trial date. Therefore, there was no need to hold an evidentiary hearing specifically on this topic.

Third, Douglas argues that the trial court was required to hold an evidentiary hearing because his standby counsel had a conflict of interest once Douglas sued DAC for civil rights violations in federal court. At the time, the trial court was considering standby counsel's request to withdraw. And ultimately, the trial court granted standby counsel's request. Because standby

counsel was permitted to withdraw, any evidentiary hearing into a possible conflict of interest became moot.

Fourth, Douglas argues that the trial court should have held a hearing regarding the files that Douglas requested from his previous defense attorneys. The files from the previous defense attorneys were the subject of many court hearings. After Douglas repeatedly told the court that he could not get the files from his prior attorneys, the court ordered the previous attorney to make the files available. The State expressed concern about Douglas gaining access to protected information because the attorney's files were unredacted. Standby counsel did not feel it was her responsibility to redact the prior attorneys' files. The trial court decided that the files would be delivered to standby counsel and standby counsel would remove any information that fell within attorney-client privilege and give it directly to Douglas. Then the State would redact the remaining nonprivileged materials. In his SAG, Douglas alleges that there was no reason the prosecutor should have seen his files and that the prosecutor violated attorney-client privilege. Based on the procedure used to get Douglas access to his prior attorneys' files, the State could not have violated attorney-client privilege, and there was no basis for an evidentiary hearing.

Fifth, Douglas argues that the trial court should have held an evidentiary hearing because he was unable to get in touch with witnesses and the DAC was not providing him appropriate assistance. The trial court repeatedly heard from members of the DAC about access to Douglas's witnesses and the aid the members provided to Douglas, aid which we have already determined was constitutionally adequate. Therefore, an additional evidentiary hearing was unnecessary.

Accordingly, Douglas has not presented any valid reason for the trial court to have held the evidentiary hearings requested and his claim fails.

MOTION TO DISMISS – TIME FOR TRIAL

Douglas also argues that his due process rights were violated because the trial court refused to hear his motion to dismiss based on CrR 3.3(h) time for trial.[12] In his SAG, Douglas asks this court,

> Did the trial court's repeated failure to hear appellant's motion to dismiss for speedy trial violation deny an additional right to due process of law?

SAG at 26. But the trial court heard and denied Douglas's motion to dismiss on two separate occasions. Therefore, Douglas's claim that the trial court violated his due process right by refusing to hear his motion to dismiss on timely trial grounds fails.

PHOTO OF DOUGLAS'S TRUCK

Douglas next alleges that the trial court erred in admitting the picture of Douglas's truck, a white Ford Explorer pickup truck. Douglas argues that admitting the photo allowed the jury to infer that his truck was the truck the witnesses saw at the scene of the fire. The witnesses at the scene of the fire testified that they saw a white pickup truck leaving the scene of the fire. Debra identified the photo the State introduced as a picture of the truck Douglas owned at the time of the fire. The officers responsible for locating Douglas testified that they were aware Douglas owned a white pickup truck and they were attempting to locate both Douglas and his vehicle. At no point during trial did any witness identify the photo of Douglas's truck as the truck seen at the scene of the fire.

---

[12] Douglas also alleges that the trial court violated his due process rights because it failed to properly file his motion for discretionary review of the trial court's denial of his motion to dismiss based on a time for trial violation. Douglas's argument relies on facts outside the record on appeal and we cannot review it on direct appeal. *State v. McFarland*, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995).

The State is permitted to prove the elements of an offense by circumstantial evidence. *See State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). Therefore, the trial court did not err by allowing the State to introduce evidence permitting the jury to infer that Douglas's truck was the truck that witnesses described leaving the scene of the fire.

VIOLATION OF A PROTECTION ORDER – SPECIAL VERDICT FORM

Douglas also argues that the special verdict form given for the violation of a protection order impermissibly relieved the State of its burden to prove all elements of the crime beyond a reasonable doubt because the aggravating factor that increases the violation of a protection order from a misdemeanor to a felony was also an element of the arson charge. The special verdict form asked the jury,

> Was the conduct that constituted a violation of the court order reckless and did it create a substantial risk of death or serious physical injury to another person?

CP at 702. To prove first degree arson, the State was required to prove "[t]hat the fire or explosion was manifestly dangerous to human life, including fire fighters." CP at 682. Douglas contends that the jury should have been instructed not to consider the arson charge when determining guilt on the violation of the protection order because finding him guilty of the arson would necessarily lead to finding him guilty of the felony violation of the protection order, thus relieving the State of proving the violation of a protection order.

The trial court instructed the jury that it must find all elements of the crime, including the aggravating factors, beyond a reasonable doubt. We presume that the jury follows the court's instructions. *State v. Lough*, 125 Wn.2d 847, 864, 889 P.2d 487 (1995). Therefore, we presume that the jury followed the trial court's instructions to find each element of the crime, including the aggravating factors, beyond a reasonable doubt.

30

VIDEOTAPE OF FIRE SCENE

Douglas further assigns three errors to the trial court's handling of the videotape of the fire scene. First, he alleges that the trial court erred by allowing the jury to view the videotape of the fire scene during deliberations. Second, he argues that the trial court erred because it refused to allow Douglas to replay the videotape during his cross-examination of the fire investigator. Third, Douglas argues that the evidence was improperly admitted under ER 403 because it was cumulative.

Although an independent review of the record does not establish if or how many times the jury actually viewed the video during deliberations, the law is clear that allowing the jury to view the tape is not error.

> CrR 6.15(e) provides that when the jury retires for deliberation, it "shall take with it the instructions given, all exhibits received in evidence and a verdict form or forms." Accordingly, we have held that the jury can take into deliberation tapes that have been admitted into evidence. *State v. Elmore*, 139 Wn.2d 250, 294-96, 985 P.2d 289 (1999) (discussing *State v. Castellanos*, 132 Wn.2d 94, 935 P.2d 1353 (1997))[, *cert. denied*, 531 U.S. 834 (2000)]. Unrestricted access to recordings during deliberations does not place undue emphasis on the tape. *Id.* at 295, 985 P.2d 289. While the above cases involved audiotapes, the same principles should apply to videotapes.

*State v. Gregory*, 158 Wn.2d 759, 847-48, 147 P.3d 1201 (2006). Accordingly, the trial court did not err when it allowed the jury to view the videotape of the fire scene during deliberations.

Douglas also argues that the trial court erred by not permitting him to play the videotape during his cross-examination. But our review of the record does not show that Douglas asked to play the videotape during his cross-examination. Therefore, Douglas cannot assign error to his own failure to request to play the videotape during cross-examination. *See Henderson*, 114 Wn.2d at 868.

Finally, Douglas argues that the videotape was cumulative and, therefore, improperly admitted under ER 403. According to Douglas, the videotape was cumulative because photographs of the fire scene had already been admitted into evidence. Under ER 403, otherwise relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." We review the admission of evidence challenged as cumulative for abuse of discretion. *State v. Dunn*, 125 Wn. App. 582, 588, 105 P.3d 1022 (2005).

Evidence is not cumulative if it presents different views or perspectives on the evidence. *See Dunn*, 125 Wn. App. at 588-89 (multiple child hearsay statements were not cumulative because they represented statements made at different stages of investigation); *State v. Bedker*, 74 Wn. App. 87, 93, 871 P.2d 673 (multiple child hearsay statements were not cumulative because some statements covered additional information not contained in the victim's initial statement or testimony), *review denied*, 125 Wn.2d 1004 (1994). Here, the videotape was unique to the forensic investigator's testimony and was relevant to her testimony explaining her investigation of the fire. Because the videotape provided a different perspective on the fire investigation, the trial court did not abuse its discretion by admitting the tape.

POST-TRIAL MOTIONS

Douglas filed several post-trial motions. He cites three particular motions in his assignment of error: the December 8 motion to dismiss, the motion for arbitration services, and the CrR 7.8 motion. Douglas does not assign error based on the merits of these motions but, rather, alleges that the trial court denied him due process and equal protection of the law by

failing to "hold hearings to determine facts associated with the Appellant's motions to the court." SAG at 36.

The trial court heard and denied Douglas's motion to dismiss and his motion for arbitration services. Then the trial court transferred Douglas's remaining motions to this court. We treated the motions as a personal restraint petition (PRP) under a separate cause number, No. 41465-1-II. We dismissed the PRP and remanded to the trial court with instructions to hear the motions or make appropriate findings of fact justifying transfer under CrR 7.8(c). Because transfer of Douglas's CrR 7.8 motion to this court is not appropriate absent proper findings of fact, Douglas was not denied due process when this court remanded the motion pursuant to CrR 7.8(c).

BIFURCATION

Finally, Douglas argues that the trial court erred in instructing the jury that they could consider evidence from the guilt phase of the trial during deliberations in the aggravating factor phase of the trial. It appears that Douglas is arguing that allowing the jury to consider evidence from the guilt phase of the trial relieved the State of its burden to prove the aggravating factors beyond a reasonable doubt.

As we have already stated, RCW 9.94A3.537(4) provides that, generally, evidence supporting aggravating factors will be considered at the same time as evidence supporting the underlying crime. The State had already proved to the jury the elements of the underlying crime beyond a reasonable doubt and, therefore, the aggravating factor findings would also be supported by proof beyond a reasonable doubt.

The State had the statutory authority to seek an exceptional sentence following remand for retrial and Douglas has not identified any reversible error tainting that trial. Accordingly, we affirm Douglas's convictions and his exceptional sentence.

QUINN-BRINTNALL, J.

We concur:

PENOYAR, J.

JOHANSON, A.C.J.